Plaintiff Eugene J. Lillis, operating under the trade name Brandin Slate Company, is engaged in the contracting business in the city of New Orleans. The defendants, Jeff R. Anderson and Annie Anderson (a colored preacher and his wife), are the owners of the real property designated as No. 1411 South Dorgenois Street, New Orleans. On August 29, 1941, plaintiff, acting through one of his salesmen, entered into a written contract with the defendants wherein he agreed to make certain alterations and improvements to defendants' property for the price and sum of $900. The work to be done by the contractor *Page 390 
is set forth in the agreement as follows: "Cover all outer walls with Red Blend Brick Ford-v-Neer Siding. Repair floors in one room wherever necessary. Apply Beaverboard in three rooms. Repair both galleries. Reverend Anderson is to furnish the lumber for both galleries with the exception of the posts. Take out bulge in rear of house. Reverend Anderson is to furnish the lumber for the ceiling of porches. Also level entire house. No Paint. Cover the main roof of house with Ruberoid Asbestos Shingles. Also replace bad sheathing and rafters on roof wherever necessary. * * *"
On March 23, 1942, plaintiff brought this suit against defendants to recover the price of the contract. He alleged, in substance, that he had performed all of the work provided for by the written agreement; that he is and has been ready to deliver the building and improvements to defendants free and clear of all liens, etc.; that, despite this, defendants have refused to pay the price agreed upon; that they complained that the contract had not been complied with; that, upon receipt of this complaint, he requested that defendants furnish a list setting forth the particulars upon which the complaint was based; that defendants failed to furnish such list and that, although he contends that the contract has been fully complied with, he is ready and willing to do any and everything necessary to remedy any work which has not been completed according to the agreement.
In answer to this petition, the defendants admitted the execution of the contract but denied any liability to plaintiff on the ground that he had utterly failed to perform the work required of him under the agreement. Defendants further filed a reconventional demand claiming that, since plaintiff had failed to perform the contract in accordance with the stipulations contained therein, they had suffered mental anguish for which they are entitled to damages in the sum of $750; that plaintiff has damaged their property in the performance of the work to the extent of $200 and that they are also entitled to recover $200 for attorneys' fees.
On June 11, 1942, the case proceeded to trial in the District Court on the foregoing issues and, after the court had heard the evidence of three witnesses testifying for plaintiff, it concluded that the work under the contract had not been fully performed. In these circumstances, the judge adjourned the hearing and, apparently with the consent of the litigants and their counsel, appointed a building expert to examine the premises and the work done for the purpose of ascertaining what work would be necessary to complete the job. And, since plaintiff had offered to perform any work which might be found necessary by the building expert appointed by the court, the judge permitted him to complete the work under the supervision of the expert.
In accordance with the judge's order, the building expert, Mr. Richard McCarthy of New Orleans, who was appointed by the court, visited the premises and thereafter directed the plaintiff to perform certain additional work in compliance with his agreement. On August 31, 1942, the expert reported to the Court as follows:
"Dear Judge:
I contacted both of the above litigants and made a careful inspection of the building located at 1411 S. Dorgenois St.
Upon my first visit there (August 12), found that the contract had not been complied with, as the work was not done in a proper manner.
The floors had not been properly repaired and a bulge in the rear wall not removed. The siding on the upper side of the building was loose and there were other matters requiring attention.
I felt, therefore, that the owners were justified in refusing to accept the work and resisting the payment on same.
On August 16th I spoke with Mr. Lillis and Mr. Cook of the Brandin Slate Co. and they agreed to make all necessary corrections in an effort to comply with the contract to the satisfaction of all concerned.
The floors have been repaired in all rooms. The loose siding has been renailed, the bulge of the back wall has been removed and in addition, 1 x 8 boards have been used on rear wall as cross braces which strengthen the building. Screens have been placed and other items have been completed.
In consideration of the above, it is my opinion that the work is completed in accordance with the signed agreement, and the plaintiff in this case should be paid $900.00 in full, provided, of course, that the necessary financial arrangements will be made as outlined in the contract.
Respectfully submitted,
(Signed) Richard McCarthy." *Page 391 
The foregoing letter was followed by another letter of Mr. McCarthy dated September 9, 1942, reading as follows:
"Dear Judge: —
For your further information, I believe that the Brandin Slate Co., have used every effort to correct many of the defects.
In my opinion the building must have been in a run down condition before the work started.
Same being out plumb and the old lumber sprung.
A building being in the above condition any of this work done could not make a first class job.
Some of the work done is not in a neat workmanlike manner, but as above stated it is hard to make a neat job, when this condition exist.
The contractors have placed several new brick piers under house and rebuilt apprex 12. They have placed some new sills, the floors were repaired in all rooms. On the drop roof new sheathing and Roll roofing were renewed. All of these latter items are not called for in the contract.
Therefore I am sure the work on this building has helped to increase the value of same.
Respectfully submitted,
(Signed) Richard McCarthy Co., Inc., By G.I. Taney."
Subsequently, on October 29, 1942, the trial of the case was resumed at which time considerable evidence was heard. Mr. McCarthy, the building expert, and his foreman, one Madison, took the stand and the court itself, together with the litigants, made an inspection of the premises. Mr. McCarthy's evidence is in accord with the statements contained in his letters to the court, which are quoted hereinabove — that is, he finds that plaintiff has substantially performed the work required of him by the written agreement; that, although plaintiff has failed to level the house as he contracted to do, he has done the best that is possible in view of the previous dilapidated condition of the premises and that, while the work done cannot be regarded as a perfect job, the condition of the premises was such as to make a first-class result impossible.
At this hearing, the defendant, Annie Anderson, testified that the salesman of plaintiff induced her and her husband to sign the contract for the repair work upon the representation that the job to be performed would place their home in a first-class condition and that they would have never agreed to permit plaintiff to do the work but for this representation.
After hearing the evidence and viewing the premises, the judge was convinced that the work required of the contractor had been substantially performed and he accordingly gave judgment in plaintiff's favor for the contract price. Defendants have appealed.
A reading of the testimony taken at the trial, together with the findings of the building expert, Mr. McCarthy, has convinced us that plaintiff has used every effort to comply with the agreement he made with the defendants to repair the latter's property. And we agree with the district judge that there has been a substantial performance of the undertaking. On the other hand, we cannot overlook the fact that plaintiff agreed to level the house and that he has failed to do so; that the work done is not a first-class job and that it was clearly within the contemplation of the defendants, at the time the contract was signed, that the repairs to be made by plaintiff would place the property in good condition. Mr. McCarthy explains that the reason why a first-class job could not be done was due to the previous dilapidated condition of the premises and he says that plaintiff has done all that could be expected of him under the circumstances. Mr. McCarthy feels that plaintiff made a mistake, in view of the unsound condition of the premises, in agreeing to undertake the job as an experienced contractor would readily realize that a first-class job could not be accomplished. In testifying accordingly, Mr. McCarthy has, we think, put his finger upon the fundamental reason for this controversy — for it stems clear that plaintiff led defendants to believe that the work could be satisfactorily performed. Annie Anderson testifies that plaintiff's salesman, who induced the signing of the contract, represented that the repairs contemplated would put the house in first-class condition and plaintiff did not see fit to rebut this evidence. Moreover, the contract itself grants to plaintiff the privilege of taking a picture of the house before and after the work was done for advertising purposes. This provision confirms the testimony of Annie Anderson to the effect that plaintiff's salesman represented that the repair work would greatly benefit the premises. *Page 392 
The remarks of the trial judge, during his visit to the premises, indicate that it was his opinion that the results accomplished by plaintiff were about all that defendants could expect, in view of the fact that the building was very old and had originally been constructed faultily with cheap material. In view of this finding, it may be that the defendants expected results which were out of proportion with the contractor's undertaking. Still, we entertain' no doubt that Annie Anderson's testimony, regarding the glowing representations of plaintiff's salesman, is true. But apart from this, since the evidence clearly shows that plaintiff has failed to level the house as he agreed to do, it is plain that the contract has not been entirely performed. The performance by plaintiff may be therefore regarded as substantial but not complete.
[1] Finding that plaintiff has not fully performed his engagement, the question arises as to the remedy afforded to defendants under such circumstances. Can they successfully resist liability for the fixed price of the work on the theory that the contract has not been completed in accordance with the agreement of the parties? We think not.
[2, 3] While it is the general rule that a person suing to recover on a commutative contract must allege and prove that he has fully performed his part of the engagement in order to recover, it is the well-settled jurisprudence of this state that this doctrine is without application to suits brought on building contracts. Article 2769 of the Civil Code provides: "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract."
The foregoing article has been construed by the courts to mean that, where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is, nonetheless, entitled to recover the contract price if the defendant fails to establish the damages he has sustained by reason of the contractor's partial default. The remedy of the owner in such cases is for a reduction in the price to an amount necessary to perfect or complete the work according to the terms of the contract. See Cairy v. Randolph, 6 La. Ann. 202; Babst v. Peritz, Orleans No. 7548 (unreported, see La. and So.Dig.); Berns Bros. v. Reiss, 12 Orleans App. 126; Davidson v. McGrath, 6 La. App. 125; Reicke v. Bland, 7 La. App. 280; Peterson v. Peralta, 3 La. App. 516; Reimann Const. Co. v. Upton, La. App., 178 So. 528 and Merrill v. Marang, La. App., 198 So. 386.
In Cairy v. Randolph, supra, the Supreme Court said: "But under the uniform jurisprudence of this court, a suit may be maintained upon a building contract, although the work be defective or unfinished, and the remedy of the defendant in such a case is for a reduction of the price agreed upon to the extent of the damages sustained by reason of the defective performance."
The decision in the Cairy case has been consistently followed in all of the later cases cited above.
In the case at bar, the defendants have mistaken their remedy as their sole defense to the action is that, since plaintiff has not fully performed the contract in accordance with the intendment of the parties, no recovery can be permitted. In no part of their answer did they allege, nor did they attempt to prove, the damages which they have sustained by reason of plaintiff's failure to level the house as stipulated in the contract. Therefore, we have no way of knowing how much it would cost to have the repairs completed and we cannot estimate the diminution in price to which the defendants might be entitled.
[4] It is true that the defendants have reconvened for damages but none of the items set forth in the demand can be sustained. The claim for $750 damages for mental anguish, inconvenience, etc., allegedly suffered by defendants as a result of the breach of contract cannot be recognized inasmuch as this type of damage is recoverable only in cases where the contract has for its object the gratification of some intellectual enjoyment, etc. See Article 1934 of the Civil Code. The claim for $200 allegedly representing damage done by plaintiff to defendants' property, cannot be allowed as there is no proof whatever to sustain it. The third item of $200 for legal services is obviously not recoverable.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 393