BAILES, Judge.
The plaintiff, U-Finish Homes, Inc., contracted with the defendants, Ralph C. Michel and his wife, Mrs. Gladys F. Michel, on August 5, 1961, for the construction of what is commonly called a shell home on a plot of ground owned by the defendants. The price for this home as agreed to between the parties was a total of $7599.90, of which amount the defendants paid the sum of $10 down and the payment of the balance was represented by the defendants making and executing a promissory note in the amount of $7589.90, payable in 83 consecutive monthly installments of $90.35 each. The price agreed to by the parties included the interest and carrying charges over this period of time of installment payments.
On the same date that the contract for the building of the shell honje was entered into, the defendants made and executed the above described promissory note. As security for the promissory note they likewise executed a special mortgage on the land on which the shell home was to be constructed. The first payment of this promissory note was due October 1, 1961. No payment whatever was made by the defendants on this note.
Executory proceeding was initiated by plaintiff on March 29, 1963, on the promissory note and special mortgage executed by the defendants as stated supra. In defense of this action, the defendants seek injunctive relief to arrest the sale of their property and to permanently enjoin the collection of the note and enforcement of the securing special mortgage on the ground that the house was unsatisfactory for the reasons that “the roof leaks, the batten boards in the front of the house are shrunk to the extent that cracks are visible, all of the flooring is not level and there are cracks visible. The blinds for the house were never installed and cannot be in view of thé fact, that the front of ■ this new structure would have to be re-done. The front steps are defected and broken. There is no snack bar separating the kitchen from the dining room. * * * (No) chain wall or spot-footing (or) concrete foundation (were installed). (The) concrete block piers (were laid) directly on the soft ground. The house now as a result is sinking.”
A temporary restraining order was sought and obtained, and in their petition for injunction, the defendants prayed for a temporary injunction to issue in due course and finally that a permanent injunction issue, enjoining “any further use of executory proceeding in” this matter; that defendants be awarded $5000 damages; that plaintiff be ordered “either to remove said defective house from defendants’ property or to perform the necessary corrective work,” and finally that there be judgment ordering the Clerk of Court of St. Tammany Parish to cancel and erase from his records the mortgage inscribed in MOB 178, page 250.
The plaintiff answered defendants’ petition for injunctive relief herein by what was tantamount to a general denial, and then reconvened for $450 as a reasonable attorney fee for services rendered in this suit for injunction on the ground that the action taken by defendants was meritless.
A rule was issued by the court to the plaintiff to show cause why a preliminary injunction should not issue, and after hearing thereon, the preliminary injunction did issue.
On this issue the case was tried in the lower court, after which judgment was rendered permanently enjoining the execu-tory proceeding, ordering the Clerk of Court to cancel the subject mortgage from the records of his office, and finally recognizing plaintiff the owner of the shell home which was to be removed from the defendants’ land within forty-five days from the date of the judgment. The de *103 fendants made no offer of proof on the trial to support their claim for damages allegedly suffered by them by reason of the defects in their home, the trial judge made no mention of it in his reasons for judgment, and no specification of error is made thereof in this court, therefore we consider this alleged claim abandoned. The same can be said of plaintiff’s asserted claim for $450 as attorney’s fee in defending defendants applicable for injunctive relief. Inasmuch as the trial judge did not pass on the merit of the claim and no assignment of error is made thereto by the plaintiff, we will consider this phase of the case abandoned, too. From this judgment, plaintiff appeals.
Before proceeding with a discussion of the evidence offered by both plaintiff and defendants, we feel it would serve us well to set forth the law applicable to such case as this, and a sampling of the jurisprudence interpreting and elucidating thereon.
LSA-C.C. “Art. 2769. Contractor’s liability for non-compliance with contract “Art. 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.”
In the case of Airco Refrigeration Service, Inc. v. Fink (1961) 242 La. 73, 134 So.2d 880, the Supreme Court said on page 79 of 242 La. on page 882 of 134 So.2d:
“[1,2] The contract involved in the instant case is a building contract within the definition of Article 2756 of the LSA-Civil Code. Article 2769 is therefore controlling. Under this codal provision the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.
“[3] Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.
“[4] The principal question presented in this case is whether or not there has been substantial performance so as to permit recovery on the contract. This is a question of fact. Among the factors to be considered are the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed.”
In the case of Lillis v. Anderson (1945), Orl.App., La.App., 21 So.2d 389, in differentiating the procedure in this type action from that which prevails in recovery on other commutative contracts, the court stated on page 392:
“[2,3] While it is the general rule that a person suing to recover on a commutative contract must allege and prove that he has fully performed his part of the engagement in order to recover, it is the well-settled jurisprudence of this state that this doctrine is without application to suits brought on building contracts. * * *.
“The foregoing article (meaning Article 2769, LSA-Civil Code) has been construed by the courts to, mean that, where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is, nonetheless, entitled to recover the contract price if the defendant fails to establish the damages he has sustained by reason of the contractor’s partial default. The remedy of the owner in such cases is for a *104 reduction in the price to an amount necessary to perfect or complete the work according to the terms of the contract. (citation of authorities omitted.)”
Reverting to the case of Aireo Refrigeration Service, Inc. v. Fink, supra, the court quoted approvingly from the opinion of the Court of Appeal, as follows:
“ 'With reference to the performance vel non of building contracts, where the contractor has defaulted, either in not completing the work or having performed defective work, but where there has been substantial performance, the contractor may sue for the full contract price. The remedy of the owner then is to allege and prove the nature and extent of the unfinished or defective work and the cost of completion and correction, the same to be deducted from the balance due under the contract. The burden is not upon the contractor to prove the value of the actual work done on a quantum meruit basis.’ ” (Emphasis supplied)
Also see: Merrill v. Harang (1940) La.App., 198 So. 386; Polizzi v. Thibodeaux (1948) La.App., 35 So.2d 660; Montague v. Milan (1953) La.App., 67 So.2d 351; Leopold v. Leggio (1955) La.App., 79 So.2d 925; Norman v. Brown (1955) La.App., 83 So.2d 488; Ebert v. Chambers (1956) La.App., 87 So.2d 613; Charest v. Busby (1962) La.App., 141 So.2d 466; Edward Chassaniol, Jr., Roofing & Siding, Inc., v. Ramsey (1962) La.App., 144 So.2d 618; and Federico v. Muhleisen (Kratzberg) (1964) 163 So.2d 843.
Actually there is no dispute between the parties as to the law applicable to the involvement of the parties in this litigation. It involves a resolution of a question of fact, namely, was there substantial performance of the building contract by plaintiff. If it is found that there is not substantial performance, the couit would be correct in ordering the contractor to remove the edifice from the owner’s property under the provisions of LSA-Civil Code Article 1928. However, if it is found that there was substantial performance by the builder, the burden is upon the owner to prove what defects, imperfections and faulty work was performed and the cost of rectifying same.
The trial judge stated in his written reasons for judgment that:
“The law applicable in such a case as this is clear. If there has been substantial compliance with the terms and conditions of the contract existing between the parties, then the contractor is entitled to be paid the contract price. The remedy of the owner is a diminution of the price to be paid by whatever amount is necessary to complete the work in accordance with the original contract. There were no specifications for this job. Only a floor plan, a material list, and the original contract and contract amendment appear in the record. No showing has been made by either party as to whether or not the materials called for were actually used in the construction of the house, or if the materials complained of were in fact sub-standard. The entire case made by the defendant appears to be based on the fact that the caliber of workmanship employed in constructing the house was sub-standard.
“There can be very little doubt as to the correctness of this assertion. The question here is whether or not the character of the workmanship is so poor as to constitute non-compliance with the terms of the contract.
“In the opinion of the Court, this is the case. It is inherent in any building contract that the work be performed in a good and workmanlike manner. That it was not so performed in this case is sufficient to constitute noncompliance with the contract.”
*105 While the contract between the parties refers to “plans and specifications on the attached sheet * * * ” none are attached to the copy of the contract in evidence. However, in evidence and as a part of the brochure describing the “Imperial” home contracted for by defendants, we find the following specifications:
“WINDOWS — All aluminum (Easy permanent Operation, Won’t rot, no painting)
SCREENS — “Built-In” Aluminum (long . life, Carefree)
DOORS — Heavy Ifá" Modern Flush Front Door.
Half Glass Back Door 1M".
ROOF SHINGLES — 215 Lb. 1st Grade Asphalt Composition.
FLOORING — #2 Pine, 1" x 4" or Better
STUDS — 2" X 4" on 16" Centers. (Quality Construction)
FLOOR JOISTS — 2" x 8", 16" O.C.
SILLS — 2" x 8" Doubled (Creosote Optional)
CEILING JOISTS — 2" x 6", 24" O.C.
RAFTERS — 2" x 6", 24" O.C.
SIDING — 1" x 8", 105 Pine, #2 or Better (Thoroughly Dry)
ROOF DECKING — #2 Pine or Better
TOP PLATES — 2" x 4" Double
BOTTOM PLATES — 2" X 4" Single
LOUVRES — Extra Large All Metal, 14" X 24"
PIERS — 8" X 8" X 16" Concrete Blocks on Precase Concrete Footing
PAINT — 2 coats Top Quality (Choice of Colors)
EXTERIOR WALL INSULATION— Aluminum Foil.”
An itemization of the cost of the shell home as proved by the defendants is as follows :
“Base Cost $3895.00
Closing cost 250.00
Light green three (3) pc. bath set 180.00
Kitchen sink, cabinets under 150.00
Supply sheet rock 200.00
Wiring kit, 220 volt 130.00
Five (5) pre-hung doors 125.00
Hot water heater, thirty (30) gal. electric 85.00
Wire up house 75.00
Hang up sheet rock 100.00
Finish floors 145.00
Window in utility room 20.00
Total cost of house 5355.00
Less Down Payment 10.00
TOTAL $5345.—
Total for house with interest $7589.90.”
In addition to his own testimony, the plaintiff offered that of Lancelot M. Dixon, a building contractor, and Henry Rester, a nursery laborer. The plaintiff’s witnesses were John H. Jacobs, a building contractor, and Dempsey Allen, a builder and former employee of plaintiff.
The defendant testified that he and his family moved into the house in September 1961, and lived there through one winter. On questioning as to how long he lived in the house, his indefinite reply was that he moved out before the following winter. He stated that his complaints about the structure of his shell home was that the foundation had sunk, a sill had a bow in it, that he got a bad finish job on the floors, that there was an arch in one or more floor joists, that there was a leak in the roof near the front door, about 4 to 5 battens were defective on the exterior of the house, that the steps were rotten, and that there were holes in the sheetrock by the light fixtures. The plaintiff had no independent knowledge of how much it would cost to make the re *106 pairs or corrections in construction. For that purpose he offered the testimony of a building contractor, Lancelot M. Dixon.
Mr. Dixon estimated that it would cost $4285 to rectify the defects in construction. He listed in his estimate eighteen items that needed corrective work. > These include the following:
1. Raise and level entire house;
2. Put 30" X 30" X 8" concrete footing under each (foundation) pier;
3. Add four piers under center sill;
4. Put 6" X 6" sills under center sill and around outside sill;
5. Remove and replace front porch and steps;
6. Remove and replace approximately 400 sq. ft. of flooring;
7. Renail approximately 500 sq. ft. of flooring;
8. Sand all floors;
9. (Install) 9x9 oak block flooring in all bedrooms, hall, living room;
10. Put 4 rows of 1 X 4 bridging under entire house;
11. Straighten all floor joices (sic), ceiling joices (sic), studs;
12. Put strong back on ceiling joices (sic) ;
13. Remove and replace sheetrock where necessary;
14. Remove and replace 1x4 battings (sic), 1x8 drop siding, corner boards where necessary;
15. Set and putty all iron nailes in drop siding;
16. Remove and replace approximately 10 squares of roofing;
17. Sand and paint exterior with 1 coat oil paint;
18. Remove all debris from premises.
His testimony was to the effect that all of the above work was necessary in order to put the house in good condition; that because of the “bad lumber and had (low) grade quality” it would be necessary to remove and replace one-half of the drop siding, all floor joists, ceiling joists and studs need to be straightened; seventy per cent of the sheetrock needs to be removed and replaced, and there are cracks in the floor of all bedrooms, hall and living room, and one half of the battens needed to be replaced. He testified that the dwelling in its present condition was worth from $3500 to $4000.
It should be noted that the only estimate of cost of repairing the defective conditions of this home offered by this defendant-owner is that testified to by Mr. Dixon.
We will now consider the testimony of Mr. Henry Roster. He stated that he acquired a U-Finish shell home, that it was a good building, constructed of good materials and workmanship; he further testified that he had visited defendants several times in this home. He stated that the foundation was not “dug,” that the living room was “wavy,” that he had seen “cracks down through and underneath the house,” and that “some of the boards on the weather boarding is over like that and split apart and you can see clean in through the house.”
The plaintiff offered the testimony of Mr. John H. Jacobs, a contractor of Bogalusa who was accepted as an expert. He stated that he had inspected the home on the morning of the trial, that in his opinion the building is acceptable as a shell home; that he found the following minor defects: The front steps have rotted away, one end of the house has settled; the floors should be refinished; that one or two battens need to be replaced; the exterior needs to be repainted and there is a minor leak in the roof near the front door. He estimated the cost of correcting these defects to be: Leveling house, $100; repairing front steps, $20; relacing battens, $5; re *107 pairing leak $3; painting exterior of house, $165; refinishing of floors, $165; He further testified that he found the floor to be of good grade and adequately nailed, the bridging was not required, that the ceiling joists, studs and walls were acceptable and that the sheetrock was a fair job. He found the spacing of the foundation piers to be less than eight feet apart, that no new sills were needed as the 2x8 laminated sills are sufficient for this type house.
The other witness of the plaintiff was Mr. Dempsey Allen, a former employee and foreman for plaintiff in the construction of this house. He testified that he saw the house on the morning of trial. He found that the house needed the following corrections : One corner of the house needs to be raised, steps need to be replaced, the porch floor repainted, interior floors refinished, two battens replaced, exterior of house repainted and leak in roof repaired. He, too, was accepted as an expert by the court. Mr. Allen stated that all of these defects were minor, and that $500 would be adequate to cover the cost of making these corrections.
It is impossible for us to reconcile the testimony of Mr. Dixon, the only expert offered by the defendant, with either the testimony of the defendant himself or that of the two experts who testified for the plaintiff. The findings of Mr. Dixon far exceed the faults complained of and enumerated by the defendant. Actually, the testimony of the plaintiff’s two experts, Mr. Jacobs and Mr. Allen, fairly well coincides with the complaints detailed by defendant.
We must reject the findings of Mr. Dixon, not only because it is irreconcilable with the testimony of defendant himself and the two experts tendered by the plaintiff, but also because if we accept his estimate of present value of the house as being $3500 to $4000 and add to it the cost of the corrective work proposed by him of $4285, the defendant would then have a house with a value far in excess of that contemplated or expected in the beginning.
While we find that the defendants have not discharged the burden imposed upon and required of them by the law of this state, the plaintiff has supplied the facts of which the defendants were deficient and has offered proof itself that certain corrections are needed of the defects proved by the defendants. The plaintiff has made proof satisfactory to us that the sum of $500 is adequate to make the necessary repairs of the defects in the construction of this dwelling.
We find that the trial judge erred in holding that there had not been substantial performance of the building contract by the plaintiff. In our opinion the facts adequately justify the finding that plaintiff did make substantial performance of its contract. We further are of the opinion that there exists certain defects, as set forth above, and that the cost of repairing and correcting these defects will amount to the sum of $500. Defendants are entitled to a credit on the purchase price of the dwelling in this amount.
Further, we find that the trial court erred in granting a permanent injunction in the executory proceeding and in ordering the cancellation and erasure of the special mortgage recorded in MOB 178, page 250 of the records of St. Tammany Parish, executed by defendants in favor of plaintiff, and in recognizing the plaintiff to be the owner of the shell home and dwelling and in ordering plaintiff to remove the said building from the property of the defendants.
We find that the net cost of the shell home to the defendants' must be reduced from the original sum of $5355 to $4855. This reduction necessitates the re-computation of interest added to the cost of the dwelling and included in the promissory note executed by defendants in payment thereof. This recomputation will reduce the face amount of the note by an undetermined amount.
Accordingly, for the foregoing reasons, the judgment of the district court permanently enjoining the executory proceeding *108 instituted by plaintiff herein, ordering the cancellation and erasure of the special mortgage recorded in MOB 178, page 250 of the records of St. Tammany Parish, recognizing plaintiff to be owner of the shell home and ordering plaintiff to remove it from the property of the defendants is reversed; and this matter is remanded to the district court for the purpose of computing the correct amount of the promissory note as above set forth, and for such other proceedings not inconsistent herewith; and in all other respects, the judgment is affirmed. The costs of court to be assessed one-half against plaintiff, and onc-half against defendants.
Judgment affirmed in part, reversed in part, and remanded.