ELLIS, Judge.
Leonard J. Breaux and Sam Landry, plaintiffs, brought suit against Co-Operative Cold Storage Builders, Inc., hereinafter designated “Co-Operative”, in Assumption Parish. Breaux is in the business of purchasing fresh catfish, processing it to a frozen product ready for market and then transporting it to Dallas for sale and distribution. His plant is located in Pierre Part and is known by the trade name of Breaux & Landry. Landry, however, at the time in question, was an employee.
On May 22, 1959, plaintiffs entered into a written contract with Co-Operative on a form provided by the latter and on which blanks were filled in to reflect the agreement between the parties. The contract obligated Co-Operative to furnish, install, at the plant in Pierre Part, a quick freeze room, or box, 17 x 8 x 6^4 feet in size. The ceiling and walls were to be constructed of seven inch corkboard and the floor of five inches of the same. The temperature was specified as minus thirty degrees fahrenheit (-30°).
Plaintiffs entered into a separate contract on June 3, 1959 with United Refrigeration, Inc., to furnish the refrigeration machinery to operate the box at a cost in excess of $7000.00.
In December of 1959 work was completed on the box and machinery and the job was accepted by plaintiffs who paid Co-Operative $700.00 cash and executed a note providing for twenty-four equal consecutive monthly installments of $85.00 each.
The plaintiffs have never been able to operate the box successfully for the purpose for which it was intended, that is, to freeze catfish at -30° F., or at any other temperature. On November 21, 1960, this suit was filed alleging in the alternative that:
1. Plaintiffs are entitled to a rescission of the sale, return of the price and damages.
2. Plaintiffs are entitled to damages for breach of contract, including attorneys fees.
3. Plaintiffs are entitled to a rescission of the sale and return of the price.
The damages sought represent an estimated loss of net profit of $175.00 per day plus $100.00 actual and $500.00 estimated engineering expenses.
Co-Operative filed an exception to the venue, an exception of no right of action, *3 a general denial, and an amended answer while the trial was in progress.
The exception to the venue was previously determined by this court and need not he considered here.
The exception of no right of action was based on a careless allegation in plaintiff’s initial petition that Breaux and Landry was a partnership. This allegation was subsequently corrected. The trial judge very correctly concluded that there was no partnership. No written or oral agreement had ever been entered into, there had been no holding out to the public that there was a partnership and the tax returns did not indicate a partnership.
The parties went to trial on the merits but because of the volume of evidence it required several non-consecutive days for trial. Plaintiffs timely objected to any testimony or evidence tending to enlarge the pleadings during the trial. The objection was of course good but considerable testimony regarding the operation of the machinery as distinguished from the box was admitted subject to the objection. Very late in the trial Co-Operative sought to amend their answer under Article 1154 of the Louisiana Code of Civil Procedure, which we quote in part as follows:
“If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.”
We believe that the ends of justice were served in the instant case by allowing the amendment which alleged that the machinery and its installation were the cause of the failure of the box to perform. Plaintiffs had to some degree opened the door by presenting the expert testimony of Mr. Sullivan that the machinery was operating properly wifh minor qualifications and that it was of sufficient size to freeze the required quantity of catfish in the required time. Plaintiffs did not request a continuance, nor did they request a new trial, nor are they at a disadvantage from lack of evidence to refute defendant’s claims regarding the machinery.
One single fact in this case has been established beyond question. That is that catfish could not be satisfactorily frozen in the box. Plaintiff argues that this is because of the improper design and construction of the box. Defendant argues that the box is sound and satisfactory— even better than average — but that the capability of the machinery is too limited and that it is improperly installed.
Both sides have offered convincing evidence to substantiate their claims.
We have read carefully the over 600 pages of testimony in this case. Much of it is expert testimony of. a very technical nature. We have studied the technical conclusions of all of the experts and find that most of it is based on what appears to be sound logic and valid premise,
Nevertheless, the fact remains that the catfish don’t freeze. Why?
Plaintiff claims that the box is designed improperly. Metal, which is a far better heat conductor than cork, extends from inside to outside of the box resulting in an increased load on the machinery. This has a secondary and more serious inherent danger in that moisture will freeze, melt and refreeze within the walls of the metal, resulting in the eventual and accelerating breakup of the insulation material.
On this point Co-Operative has shown that the heat transfer caused by the protruding metal is negligible and that it is common to design boxes with protruding metal when structural considerations die- *4 tate it. Ice does, however, form on the protruding metal.
Plaintiff claims that the box leaks through joints which are improperly designed and/or constructed. In fact, there is an abundance of convincing evidence that the light from inside could be observed from outside, though this was later corrected by Co-Operative by installing a piece of molding. The leaks result in ice formations on the exterior of the box, additional moisture condensation on the coil inside the box and a resulting overload and cut off of the machinery. The air change also places additional load on the machinery resulting in less efficiency.
Defendant’s answer to these claims is that there are no leaks of any consequence and that their experts could not detect any light penetration into the box, even with the interior in complete darkness. Defendant argues that the ice which plaintiffs claim formed on the outside of the box was not a fault of the box and that their expert witnesses did not detect the formation of any such ice. Mathematical computations were offered to prove that the amount of heat loss through the box walls and ceiling was well within allowable limits. As to the moisture introduced into the box through the alleged leaks, defendants claim that this would not overload the machinery and cause the fan to kick off. In fact, their experts testify, this particular type of fan would develop less horsepower if the coil were frozen over, would draw less current and consequently would be less likely to cut out due to overload.
Mr. Gene Sullivan, an independent consulting mechanical* engineer, inspected and operated the box at plaintiffs’ request on July 14, 1960. His opinion was that the box evidenced very poor workmanship and that it was unsuitable. The machinery he found to have adequate capacity. He attributed the failure of the operation to excessive moisture penetrating from the outside, condensing on the coil, creating an overload on the one horsepower blower motor resulting in an automatic shut off by the overload protective devices in the motor.
The trial judge was evidently impressed with Mr. Sullivan’s testimony. He, of all the experts, made the most extensive inspection of the box under operating conditions at an early date.
We cannot find that the trial court is in error in its factual determination that the failure of the box and machinery to freeze catfish was attributable to the box and not to the machinery. The trial judge, as the record indicates, made every effort to understand the technical problems involved and we believe he succeeded.
Being unable to show any manifest error in these conclusions of fact arrived at by the trial judge, we accept his determination that the box rather than the machinery was at fault and could not be properly operated. Under this circumstance, the purpose of the contract has been defeated and plaintiffs are entitled to relief.
Defendant contends that there has been a substantial compliance and performance of the contract and that, consequently, damages are limited to an amount required to correct the defects. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880. This is certainly a correct statement of law. Whether there has in fact been a substantial performance of the contract is a matter of fact to be determined. This was determined in the negative below, the trial court applying the factors mentioned in the Airco case at page 882:
“Among the factors to be considered are the extent of the defect or nonperformance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed.”
*5 Considering that the box is completely unsuited for the intended purpose, we concur with the trial judge that there has not been a substantial compliance with the contract, and the box is of no benefit to the plaintiffs. Consequently, plaintiffs are entitled to relief.
Actually, the problem here is one concerned with the burden of proof. The Aireo case clearly held that where there is a substantial compliance with the contract the burden of proof is on the party alleging defects in the performance to prove their existence and cost of correction or amount of damage resulting from them. This would be true whether the contractor is suing for the price or the other party to the agreement is seeking a return of part of the price or damages from a contractor.
However, in a case where there has not been a substantial compliance with the contract, the burden of proof to establish the value of his services is placed on the contractor who can recover only under quantum meruit. The burden of proof to determine substantial performance vel non would be on the plaintiff, whether he be the contractor suing for the price or the other party seeking a return of the consideration.
In the instant case the plaintiff has established that there was no substantial compliance because the box did not perform as intended, and the box is of absolutely no value to plaintiffs. To apply the factors set forth in the Aireo case, the extent of the non-performance approached 100%, the purpose of the contract was completely defeated, the defects evidently could not be corrected because Co-Operative had not done so, and plaintiffs received no benefits from the work. Co-Operative has not attempted to show otherwise by pointing out the defects and the cost of correction of same. To the contrary, CoOperative claims full contract performance and alleges that the machinery is defective, an allegation which is factually unacceptable in view of the evidence.
The law applicable to the facts of this case is stated also in Volume 7, Louisiana Law Review, page 577, as follows:
“Liability of the Undertaker
Article 2769 governs the undertaker’s liability when he fails to perform in accordance with the contract. It provides that
“ ‘If an undertaker fails to do' the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.’
“This article must be construed with the new well-settled doctrine of substantial performance. Substantial performance is said to exist when there has been no omission in the essential elements of the contract, but when the strict letter of the agreement has not been carried out because of slight deviations or because of technical, unimportant, or inadvertent defects or omissions.[65] The
doctrine as applied in the majority of cases [66] is to the effect that when the un-
dertaker has substantially performed, he may sue for the recovery of the entire contract price. The owner in order to escape the payment of part or all, of the contract price bears the burden of proving the damages caused him by the defects and omission.[67] Because of the
*6 language used in this line of cases, it would seem at first glance that the burden of proof is on the proprietor to show damages that he has incurred because of the defects and omissions even in cases where the contractor has not substantially performed.[68] However, a closer in-
spection will reveal the distinction between cases where the undertaker has substantially performed and those where he has not. (Emphasis that of Law Review).
“Thus in cases where the undertaker has not substantially performed, he may still recover for the value of his work and materials which have inured to the benefit of the owner.[69] Recovery is al-
lowed on the theory that the owner should not be unjustly enriched at the expense of the contractor. This is the case even though the undertaker may have ‘willfully’ abandoned the contract,[70] the theory
being that the principle of unjust enrichment outweighs the general rule that the wilful violator is entitled to no relief. On the other hand, when the unfinished work ‘is of no benefit to the owner, the undertaker will be denied recovery for his work and material.[71]
(Emphasis added.)
The lower court was correct in rendering judgment for plaintiffs for the full return of the price.
Affirmed.

“65. Mitchell v. Holomon, 10 La.App. 219, 120 So. 672 (1929).

“66. Cairy v. Randolph, 6 La.Ann. 202 (1851); Davidson v. McGrath, 5 La.App. 125 (1926) ; Reinmann Const. Co. v. Upton, 178 So. 528 (La.App.1938); Lillis v. Anderson, 21 So. (2d) 389 (La.1940).

“67. A. M. Blodgett Const. Co. v. Cheney Lumber Co., 129 La. 1057, 57 So. 369 (1912); Boane [Borne] v. Hardin, 15 La.App. 286 [131 So. 472] (1930); Merrill v. Harang, 198 So. 386 (La.App.1940); Lillis v. Anderson, 21 So. (2d) 389 (La.App.1945).

"68. Ibid. See also Slack v. Standard Chevrolet Corp., 197 So. 200 (La.App.1940).

“69. Etie v. Sparks, 4 La. 463 (1832) ; Allen v. Wills, 4 La.Ann. 97 (1849) ; Taylor v. Almand[a], 50 La.Ann. 351, 23 So. 365 (1897) ; Babst v. Peritz, Orleans Appeals, Docket No. 7458, Teissier’s Digest of the Unreported Decisions of the Court of Appeal (1923) 36; Peterson v. Sutter, 4 La.App. 180 (1926).

“70. Peterson v. Sutter, 4 La. [App.] 180 (1832); Slack v. Standard Chevrolet Co., 197 So. 200 (La.App.1940).

“71. Mitchell v. Holomon, 10 La.App. 219, 120 So. 672 (1929).”