203 So.2d 888 (1967)
A. A. HOME IMPROVEMENT COMPANY, Inc.
v.
Mr. and Mrs. Thomas C. IRWIN.
No. 2741.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1967.
Rehearing Denied December 4, 1967.
Edward K. Pinner, Sr., New Orleans, for plaintiff-appellant.
Cabibi & Cabibi, Charles E. Cabibi, New Orleans, for defendants-appellees.
Before McBRIDE, REGAN and BARNETTE, JJ.
*889 REGAN, Judge.
The plaintiff, A. A. Home Improvement Company, Inc., filed this suit against the defendants, Mr. and Mrs. Thomas C. Irwin, endeavoring to recover the sum of $303.00, together with interest and attorney's fees. The plaintiff's suit is predicated upon a written contract wherein it agreed to furnish and install several windows to enclose the rear porch of the defendants' premises located in 8319-21 Zimple Street, in the City of New Orleans.
The defendants answered and asserted therein that the plaintiff breached its contract when it failed to perform in conformity with its terms, and by installing improper windows which were in a defective and damaged condition.
The lower court concluded from the composition of the record that it could not decide the case on its merits. Consequently, it dismissed the suit without prejudice, and the plaintiff has prosecuted this appeal.
The record discloses that on December 5, 1963, the plaintiff, acting through its president, Irwin J. Smitt, entered into a contract with the defendants wherein it agreed to furnish and install four 6×4 foot slider hung windows and two 5×4 foot sliding windows. The agreement further provided for two wooden mullions which act as dividers between the windows and two bumper type thresholds. The price therefor was to be $333.60; a down payment of $33.60 was required, and the balance was payable in three monthly installments. Shortly after the work had begun, the parties agreed to replace a small piece of flooring for the price of $3.00. Therefore, the balance due the plaintiff under the contract amounted to $303.00.
The defendants, as we said, wanted the foregoing windows installed for the purpose of enclosing a rear porch which was already partially enclosed by a weather-board wainscoting approximately half the distance from the floor to the ceiling. Therefore, the windows would complete the enclosure thereof. The record indicates that there was some discussion as to the type of window to be hung, but the contract contains no specification as to what brand thereof was to be installed.
When the work was completed, the defendant requested the plaintiffs to move the window frames out one fourth of an inch, so that the outside edge of the aluminum sill would be one quarter inch beyond the end of the wooden sill upon which it sat, and a quarter inch beyond the outside face of the weatherboards. The plaintiff's carpenter returned to the defendants' premises, unscrewed the six windows, moved them out a quarter inch, rescrewed them properly and caulked them inside and outside. Mrs. Irwin then signed her name across the face of the contract to indicate that the work had been done to her satisfaction. In any event, the defendants refused to make any payment on account of the agreement insisting that the wrong brand of windows were installed and that the carpenter had removed some part of the windows before installation, which caused them to leak when it rained. Hence this suit.
The witnesses for the plaintiff explained that there was no agreement as to the type of windows which were to be installed. In addition, they contend that the only parts removed from the windows prior to installation were masonry trim fins, which are placed on aluminum window frames in the event that they should be installed in a brick veneer home. These fins, which are approximately two inches back from the leading edge of the window, are nailed to the wooden supports of the house, so that they aligned almost even with the face of the brick veneer finish. However, when these windows are installed in a frame house, they are removed by the tearing thereof along a perforated line which was contemplated by the manufacturer when the windows would be used for this purpose. The plaintiff's witnesses further explained that these fins are not intended to serve as flashing in order to prevent the entry *890 of water, since they are, to reiterate, perforated and therefore contain innumerable holes.
The printed portion of the plaintiff's contract stipulates that it will do the work in a workmanlike manner in accordance with standard practices. When asked by counsel for the defendants whether he had complied with this portion of the contract, the plaintiff's witnesses readily admitted that the work was not performed completely in accordance with "standard practices", since the method of construction requested by the defendant was, of itself, not a standard practice. To the contrary, they simply explained that in order to obtain the job it was necessary for them to perform the work in conformity with the requests and desires of the person employing them.
In any event, we are convinced that the solution hereof emanates from an analysis of the testimony of the defendants' witness, Joseph Ridolfo, who qualified as an expert in the construction business. He stated unequivocally that the plaintiff had rendered the defendant substantial performance of their building contract. On the other hand, he vaguely recalls some minor defects in the work, such as poor methods of nailing, which he considered to be unworkmanlike. He also pointed out that it is not a standard practice to install aluminum frame windows with wooden mullions. However, he recanted when it was pointed out to him that the contract actually called for wooden mullions as opposed to the standard aluminum mullions.
The law applicable to building and construction contracts such as this is covered by the rationale emanating from Civil Code Article 2769, which reads:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
As pointed out in the case of Loeb v. Neilson,[1] the law governing building and construction contracts is different from that which generally governs commutative contracts, where there can be no recovery in the absence of full and complete performance. However, the doctrine of substantial compliance is sufficient to justify recovery of the contract price by the plaintiff. The owner's remedy in the presence of a substantial compliance or performance of the contract is to allege and prove the nature and extent of the unfinished or defective work, so as to reduce the amount of the plaintiff's judgment by the amount of the cost required to correct the defective work. The burden of proof in a case of this nature as to the defects and omissions on the part of the contractor and the cost of repairing and finishing them lies squarely upon the owners who claim that defective work exists.
In this case, the defendants have obviously mistaken their remedy, and contend that they are not obliged to pay the plaintiff anything in the absence of complete and perfect construction. Nowhere in the record is there a distinct evaluation of exactly what work the plaintiff failed to perform, and the cost of remedying any defect, if one or more actually existed. The defendants' own expert witness failed to discuss specific details regarding the nature of any defects, and the cost or repairing such defects was not even mentioned. Therefore, we have no way of knowing how much it would cost to have the alleged defects repaired, and we cannot estimate the diminution in price to which the defendants might be entitled.[2] For this reason, we find it necessary to remand the case to the lower court in order that the defendants may sustain their burden of proof in establishing the defects *891 in the plaintiff's work and the cost of the repair thereof.
The lower court accorded some consideration to the fact that after the work was performed, the windows together with other portions of the porch which they enclosed, were damaged or destroyed by Hurricane "Betsy" in 1965, and that the defendants collected insurance for the repair thereof. Since this occurred after the installation of the windows by the plaintiff, this destruction and consequent recovery of insurance therefor is of no relevance to this litigation, and it should not be considered by the trial court in arriving at a determination of the amount due the plaintiff.
The record clearly discloses that the plaintiff substantially performed the contract. The burden of proof has now shifted to the defendants to show that the work was defective and to establish the cost of repairing any defect. Since the contract calls for 25% attorney's fees in the event suit is necessary for collection of the amount thereof, the final award made by the lower court is subject to this provision, and 25% thereof should be added to the judgment in conformity with the contract.
For the foregoing reasons, the judgment of the lower court is reversed, and this case is now remanded[3] for such additional proceedings as its nature may require and in conformity with the rationale expressed hereinabove.
The defendants are to pay all costs hereof.
Reversed and remanded.
BARNETTE, J., dissents with written reasons.
BARNETTE, Judge (dissenting).
I respectfully dissent.
I am in agreement with everything said in the foregoing majority opinion except the sentence: "For this reason, we find it necessary to remand the case to the lower court in order that the defendants may sustain their burden of proof in establishing the defects in the plaintiff's work and the cost of the repair thereof." I must respectfully dissent therefrom and from that portion of the decree which remands the case for further proceedings.
The majority holds: "The record clearly discloses that the plaintiff substantially performed the contract. The burden of proof has now shifted to the defendants to show that the work was defective and to establish the cost of repairing any defect." "Substantial" performance by its very terms means something less than "full" performance. So conceding that the performance was less than complete and defendants have proven defects, the burden of proving the loss ensuing therefrom must also be carried by them. But this is not a burden which they are only "now" called upon to discharge which was cast upon them as the result of the judgment or a shift of positions during trial. They carried this burden from the moment issue was joined by filing their answer in which they raised the affirmative defense of noncompliance, unworkmanlike performance and defects. Since the defendants failed to discharge this burden of proof, plaintiff is entitled to judgment for the full amount of the unpaid contract price, plus 25 percent additional as attorney's fees on the authority of LSA-C.C. art. 2769 and the following cases. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Rocquin v. Simmons, 187 So.2d 472 (La.App. 4th Cir. 1966); U-Finish Homes, Inc. v. Michel, 183 So.2d 101 (La.App. 1st Cir. 1965); Loeb v. Neilson, 128 So.2d 447 (La.App. 4th Cir. 1961); Lillis v. Anderson, 21 So.2d 389 (La.App. Orleans 1945).
In the Airco and U-Finish cases the defendants failed to prove the cost of remedying *892 the defects, but the court found in the plaintiff's testimony in each case an estimate which it used as a basis for supplying the deficiency in defendant's proof. There is nothing in either opinion to indicate that a remand would have been ordered if this deficiency had not been supplied.
The majority opinion cites Lillis v. Anderson, supra, with particular reference to the following:
"In the case at bar, the defendants have mistaken their remedy as their sole defense to the action is that, since plaintiff has not fully performed the contract in accordance with the intendment of the parties, no recovery can be permitted. In no part of their answer did they allege, nor did they attempt to prove, the damages which they have sustained by reason of plaintiff's failure to level the house as stipulated in the contract. Therefore, we have no way of knowing how much it would cost to have the repairs completed and we cannot estimate the diminution in price to which the defendants might be entitled." 21 So.2d at 392.
Then the majority says: "For this reason, we find it necessary to remand * * *." But in the case cited, the court did not remand. On the contrary it affirmed the judgment of the lower court which granted plaintiff full recovery for the substantial performance.
Article 2769 gives to the party claiming a failure of the contractor a right of action "in damages for the losses that may ensue from his non-compliance with his contract." The assertion of this right of action, whether it be by suit brought against the contractor or by way of defense to the contractor's suit for the contract price, imposes upon the party asserting it the burden of proof.
The defendants here have had their day in court. They neither alleged nor proved the extent of their losses on account of the contractor's alleged noncompliance. It is as though they had sought damages in a direct action and failed to carry the burden of proof, in which case a judgment rejecting their demands and dismissing their suit would have been proper.
The majority pointed out that defendants called in Joseph Ridolfo, a qualified expert, to examine the work done by plaintiff. He testified that there was substantial performance, but there were some minor defects. Defendants made no attempt to prove by this witness or any other witness, the cost of remedying such defects. Furthermore, plaintiff told defendants to have someone make the necessary corrections and any charge within reason would be accepted and deducted from the balance due. Defendants made no attempt to do so. They have had ample opportunity to prove their losses on account of plaintiff's alleged noncompliance and it was certainly possible for them to do so. As we said in Loeb v. Neilson, supra, "we are of the opinion that such a cost could have been ascertained by [them]." They should not now be allowed to benefit from their own failure.
I would prefer to rest judgment on the foregoing legal basis, but will add one final practical reason against remand. The windows in question were blown out by hurricane "Betsy" and replaced with new ones by defendants' insurer prior to trial below. Entirely aside from any consideration of the equitable question of unjust enrichment, it is now impossible for the extent of noncompliance or the cost of correcting any alleged defects to be proven. All of this is shown by the record before us on appeal; and we should invoke Article 2164 of the Code of Civil Procedure and render a judgment which is just, legal, and proper upon that record. A remand and further litigation of the issue is neither warranted under the facts nor supported by jurisprudence.
Rehearing denied.
For the reasons stated in my dissenting opinion, I think a rehearing should be granted. BARNETTE, J.
NOTES
[1] 128 So.2d 447 (La.App., 1961).
[2] See Lillis v. Anderson, 21 So.2d 389 (La.App., 1945).
[3] See La.C.C.P. Art. 2164 and Comment (c) thereto.