de la HOUSSAYE, Judge.
This is a suit for a fee. for architectural services performed under a contingent fee contract. The plaintiff, Clinton R. “Buck” Dobson, brings this action against the Parish of East Baton Rouge (hereinafter referred to as the Parish), contending that he is entitled to a fee of $280,000.00 for work done by him under his contract with the Parish in connection with proposed construction of a judiciary building complex. In the alternative, the plaintiff sought recovery on a quantum meruit basis, i. e., that even if the contract was not binding or effective; nevertheless, he, in good faith, proceeded toward completion of the work to be accomplished under the contract and should be paid a fair amount for his services.
The Parish resisted the claim with several arguments. First, it was contended that there was no valid contract by which plaintiff could recover because the contract which was executed was materially different and broader than the authorizing resolution of the Parish Council. Further, it was submitted that the condition set forth by the resolution concerning the successful passage of a bond election was never met and, consequently, the petitioner was not entitled to a fee.
The trial judge held that the payment of architectural fees arising from the project was express and specifically restricted to the successful passage of an ad valorem bond issue or the acquisition of Federal aid in the form of a Planning Grant or Advance from HUD (Housing and Urban Development) for this particular purpose. As interpreted by the trial court the contract was strictly a contingent contract based upon the successful passage of a bond issue.
It was also stated by the Lower Court that the sole authority for a contract of this nature is the ordinance or resolution of the (Police Jury). Therefore, the contract could not go beyond its terms without making the contract null and void. Accordingly, East Baton Rouge Parish could not be allowed to expand on the terms of the contract as expressed in the resolution authorizing this contract.
The trial judge further disallowed recovery by plaintiff under the doctrine of quantum meruit because plaintiff did not *112 show (1) that the Parish benefited from his labors and (2) that the Parish was unjustly enriched thereby.
We agree with our learned brother below and quote extensively from his recitation of the facts.
“The facts pertinent to the controversy are not in dispute and therefore a decision in this matter largely rests upon an interpretation of the various documents and resolutions relied upon by the respective parties. A chronological review of the events leading toward the culmination of the litigation show that for some time the Parish has been in dire need of adequate offices to house the various constitutional and judicial departments of the Parish government. Toward satisfying this demand, the responsible authority, the Parish Council, on November 13, 1967, adopted Resolution Number 7427, authorizing the May- or-President to employ Clinton R. Dob-son (lead architect), Wilson & Coleman, Miller, Smith & Champagne, Newman & Grace, and Thompson, Thompson & Edwards as architects to perform the architectural services in connection with a judicial building complex for the Parish of East Baton Rouge. This resolution provided that the appointment of these architects was to be made ‘subject to and strictly in accordance with the provisions of this resolution’. Portions of this resolution are quoted extenso:
“ ‘Section 2. The contract with the architects employed hereunder shall provide that payment for all work performed shall be strictly on a contingent fee basis; in the event a bond election including the Judicial Building Complex is called and such project approved by the property taxpayers, and this Council proceeds with plans for construction of the proposed Judicial Building Complex, the architects designated will be employed to carry out the project and will be paid for architectural services rendered out of the bond proceeds. In the event such election fails or this Council should otherwise abandon the project, then it is specifically understood that the architects will be paid nothing and the Parish shall have no liability or responsibility for any fees, costs or expenses related to their services in connection with the project.
“ ‘Section 3. It is understood, however, that the Parish will request Federal Aid in the form of a Planning Grant or Advance for preliminary plans of the project, and in the event such Grant of Advance is approved, the architects will be paid out of funds allocated to the project by the Federal Government, but beyond the amount of such Grant or Advance, the Parish shall have no obligation to architects.’
“The official minutes of the meeting at which this resolution was adopted show:
“ ‘After discussion, a motion was made by Mr. Harris and seconded by Mr. McConnell that the five architects named by the Mayor-President be retained on a contingency basis for the Judicial Building Complex, these architects being: (1) Clinton R. Dobson (lead architect); (2) Wilson & Coleman; (3) Miller, Smith & Champagne; (4) Newman & Grace; (5) Thompson, Thompson & Ed-monds; and further, the Mayor’s Office make application to HUD for a planning grant for this municipal complex and other needs of the community. If the grant is obtained and, also, if the bond issue passes, then the architects would be paid for the planning and designing that they have done; otherwise, the City-Parish is not responsible to the architects for costs involved. It was further specified that the new building be placed in the area designated by the Building and Task Committees, just west of the present Court House.’
“At a subsequent meeting on February 12, 1969, the Parish Council adopted Resolution Number 8108 which amend *113 ed Resolution Number 7427 and deleted Thompson, Thompson & Edmonds from the list of architects described in 7427, but specifically maintained in all other respects the provisions of the earlier resolution.
“Pursuant to these resolutions, the May- or-President, on behalf of the Parish, entered into a contract on March 7, 1969, with the aforesaid architects whereby they agreed to provide the professional services for the project for the fee equal to seven percent of the projected construction cost of $8,000,000.00. This contract recognized that W. W. Dumas, as Mayor-President was authorized to act on behalf of the Parish by virtue of the two resolutions previously described. It further specified that:
“ ‘2.4 The payment of architectural fees is contingent upon a bond election including the Judicial Building Complex called and approved by the property taxpayers or other bonds and/or evidences of indebtedness being issued, and the Parish Council proceeding with plans for construction of the proposed Judicial Building Complex. The Architect is to be paid for services rendered hereunder solely out of such bond proceeds. In the event such election fails, or said other bonds and/or evidences of indebtedness not be issued, or should the Parish Council otherwise abandon the Project, then it is specifically understood that the Architect will be paid nothing, and that the Parish shall have no liability or responsibility for any fees, costs or expenses related to their services in connection with the Project. It is understood, however, that the Parish may request Federal aid from HUD (Housing and Urban Development) in Fort Worth, Texas, in the form of a Planning Grant or Advance for preliminary plans of the Project. In the event such Grant or Advance is approved, the Lead Architect himself shall be paid out of the funds allocated to the Project by the Federal Government for his work done in preliminary planning, including schematic and informational drawings, public relations, including appearance before such individuals or groups as is necessary to promote the success of said bond issue, up to twenty-five (25%) percent of the Architectural fees on the Project computed at the Basic Rate.’
“Thereafter, on March 20, 1969, the several architects entered into another agreement whereby they agreed to the division of responsibility, work, and fees emanating from the project. In this agreement, Dobson, as the lead architect, was assigned the responsibility for all preliminary planning, including schematic and information drawings, public relations, the final plans and specifications, and for supervision of actual construction for which he was to receive 50% of all architectural fees paid by the owner. The remaining architects assumed the remaining tasks of the architectural services required for the job.
“It appears that Dobson thereafter commenced to secure information relating to the space requirements of the various constitutional offices. He attended a number of meetings with these officials for this purpose. In the furtherance of these findings, he supervised the preparation, in his office, of a set of schematic drawings illustrating the space needs in the form of the proposed structure.
“The record of testimony in this case fails to furnish the real reason or reasons for the temporary discontinuance of the project and the discharge of Dobson as architect on the project, but on June 11, 1969, the Parish Council, by Resolution Number 8283, officially directed the suspension of all operations on the project ‘until such time as the Capital Improvements Program under study by this Council is formulated.’ Subsequently, the Parish Attorney, at the direction of the Parish Council, notified Dobson on December 17, 1969, that his contract was cancelled.”
*114 After an examination of the pertinent aspects of the contract in question, we find it difficult to believe that the document could be more specific and to the point. Funding of this particular project was to be derived from either a bond issue or Federal aid. Neither came into existence as required, therefore, Dobson must abide by the terms of his contract.
Dobson has not been able to establish any basis which could support a contention that he was either unaware of the contingency nature of this contract or that he was in effect promised something different by any agent or member of the Parish Council. Nor would we be allowed to accept a theory at variance with the specific language of this contract.
A police jury may not contract outside of the authority of an enabling resolution or ordinance properly passed by that body. Whitney v. Parish of Vernon, 126 La. 13, 52 So. 176 (1910); Burk v. Livingston Parish Police Jury, 207 La. 533, 21 So.2d 719 (1945). Our interpretation of the contract at issue is that it is proper as to form, and content, and accordingly, must be upheld as interpreted by the Lower Court.
The source of payment of the architectural fees was of such importance that the Parish emphasized that the payment of the architects’ fees was strictly contingent upon the passage of a special bond issue or obtaining Federal aid. If it had wished to add any other method of funding, it would have been a simple matter to so express this desire by incorporation of it in the ordinance.
In the alternative, Dobson seeks recovery under the doctrine of quantum meruit. Having determined that the questioned contract is valid and binding on all parties, Dobson properly should not be allowed to now argue that he deserves remuneration when he originally agreed to handle this matter on a contingent basis.
Even if the doctrine of quantum meruit were applicable, we would be forced to deny recovery to appellant. We agree that whenever one party derives any benefit from services rendered by another there is an implied promise to pay on the part of the one who received the benefit. Bouterie v. Carre, 6 So.2d 218 (La.App. Orl., 1942).
The reason recovery is allowed is because no one should be allowed to be unjustly enriched at the expense of another. But in order for unjust enrichment to exist, there must concomitantly be shown that the Parish derived a benefit from Dobson’s endeavors. Breaux v. Co-Operative Cold Storage Builders, Inc., 187 So.2d 1 (La.App. 1st Cir. 1966).
Dobson was originally retained to aid in the design of a Judicial Building, but this structure was never constructed. Instead of erecting this building, the Parish eventually began work on a completely different set of office buildings to be known as the Governmental Complex.
Considering all of the testimony and evidence filed for record in this case, we are unable to determine that Dobson’s labors benefited the Parish to any consequence in the ultimate planning and construction of the new facility. We don’t doubt that preparatory work was done concerning the Judicial Building, but there was no evidence submitted showing that this work was utilized whatsoever by the Parish or subsequent architects in the preparation of plans for the Governmental Complex.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.
Judgment affirmed.