McCALEB, Justice.
 

 This is a redhibitory action.- In April of 1950, plaintiff, a domestic corporation engaged in the sale and installation of heating and air-conditioning equipment, bought two 7% ton air-conditioning units from defendant manufacturer, a Missouri corporation, for $1,148.38 each. Thereafter, in the course of its business, plaintiff sold these units to J. I. Roberts and R. O. Smith for use in a tourist court about to be opened by them, but both units failed to function shortly after installation in July of 1950. Upon being thus advised by its purchasers, plaintiff at once contacted an officer of defendant by long-distance telephone at his home in St. Louis, the day being a Sunday, informing him of the inability of the units to function and requesting that they be replaced immediately. This officer declined to make any commitment at that time. During the early part of the next week, Roberts and Smith,, having already required plaintiff to remove-the air-conditioners from their premises and' being anxious to open their new tourist court, purchased satisfactory machines from another source. After the units were removed, defendant advised plaintiff that a replacement order could be forwarded forthwith but plaintiff declined this offer.
 

 Subsequently, Roberts and Smith brought suit against plaintiff for an overpayment on their contract of $3,390, representing the purchase price paid by them to plaintiff for the unacceptable air-conditioning units, and were given judgment which was affirmed here on appeal. See Roberts v. Radalec, Inc., 222 La. 831, 64 So.2d 189. In that case, it was established that the units would not function and it has since been shown, as a result of an examination made by defendant, that their failure to operate was due to defective material and workmanship inside the motors.
 

 Plaintiff’s petition, after alleging the existence of redhibitory vices and defects rendering the units unfit for air-conditioning purposes, prayed for a recission of the contracts of sale and for judgment of $3,390, the sale price which it would have received from its vendees if the units had performed the function for which they were sold. In an amended petition, plaintiff additionally claimed $398.77 for storage and transfer
 
 *121
 
 expenses and $5,000 for alleged damage to its business during the year 1950.
 

 The defense to the suit is founded on three grounds — (1) that the action of redhibition will not lie because the implied warranty of fitness of the units has been fulfilled; (2) that plaintiff did not allow it to replace the defective parts, as provided for in its written warranty and (3) that this express warranty excluded the existence of any implied warranty.
 

 After a hearing on these issues, the trial court found for plaintiff and rescinded the sales, awarding plaintiff $3,688.77, which is the aggregate of the purchase price, lost profits and storage and transfer expenses. Defendant has appealed.
 

 The contract of sale between the parties included a written warranty that the machines were “ * * * free from defects in material and workmanship under normal use and service; the Manufacturer’s obligation under this guarantee being limited in making good at their factory any part or parts thereof which shall within twelve (12) months after delivery to the original purchaser disclose to the Manufacturer’s satisfaction in their investigation to have been defective”. The warranty also set forth the procedure to be followed by the distributor: “When making any claim under this Warranty, advise the Manufacturer immediately and they will forward replacement part or parts (Sight Draft, Freight Collect). Distributor should then return the part or parts to the Manufacturer, satisfactorily packaged or crated (Freight Prepaid). Should the Manufacturer’s investigation disclose to their satisfaction the part or parts to have been defective, the Distributor’s account will be credited accordingly”.
 

 At the outset, it is contended by defendant that the redhibitory action is not available in this case as the defects complained of were not such as to render the air-conditioners useless or imperfect within the meaning of Article 2520 of the Civil Code.
 
 [1]
 
 The theory of the proposition is that, whereas the motors of both machines contained defects due to faulty workmanship in one case and defective material in the other* the air-conditioning units, of which these motors were merely a part, were not so imperfect as to be intrinsically or inherently incapable of performing the task for which they were designed and sold as the defects could have been easily remedied either by repair, or by the installation of new motors.
 

 We find no substance in the argument. In actions of redhibition, it is essential only that the buyer show that the imperfection of the thing sold be of such a nature as to warrant the supposition “that the
 
 *123
 
 buyer would not have purchased it, had he known of the vice”. Article 2520, Civil Code. In this case, we think it obvious that plaintiff, being engaged as a dealer in air-conditioning units, would not have purchased the defective machines if it had known that they would not operate when properly installed in the premises of its vendees. The fact that the defects were confined to a specific part of the machinery and that the units could have been made to function properly by installing new motors or by rehabilitating the defective ones, does not furnish a valid basis for denying plaintiff the remedy of redhibition provided by Article 2520.
 

 The second point raised by defendant, that plaintiff did not allow it to replace the defective parts as provided by its warranty, is inextricably connected with its other contention that the express warranty excluded the existence of an implied warranty because, unless the latter contention is well founded, plaintiff’s failure to comply with the conditions of the written warranty could not operate as a bar to the redhibitory suit under the implied warranty. At any rate, defendant’s position that plaintiff did not give it an opportunity to replace the defective parts is not supported by the facts which show that, when plaintiff learned that the units would not function, it immediately contacted defendant’s officer in St. Louis, who refused to make any commitment at that time. Forasmuch as time was of the essence, as plaintiff’s vendees, faced with the opening of their tourist court, justifiably refused to accept the defective machines, the offer by defendant to replace the machines, some two days after plaintiff’s telephone communication, came entirely too late.
 

 Nor do we find any merit in defendant’s contention that its written warranty excluded the implied warranty of fitness provided by law. The express warranty guaranteed the machines against defective material and workmanship and obliged the manufacturer, during a period of one year from delivery, to supply new parts whenever it was shown to the manufacturer’s satisfaction that any particular part of the machine was unsound. But this warranty did not state that it was given in lieu of all other warranties implied by law or that, in case the machines failed to perform the function for which they were manufactured, the defendant would be relieved of all responsibility other than that expressly stated for replacement of parts by reason of defects in material and workmanship.
 

 Under Article 2476 of the Civil Code, the warranty against hidden defects and redhibitory vices is implied in every contract of sale unless expressly excluded, see Nelson v. M. C. M. Truck Lines, 209 La. 582, 25 So.2d 236, and Article 2474 declares that “The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him”. Accordingly, even if it be liberally conceded that the defendant actually intended to restrict its entire liabil
 
 *125
 
 ity to a replacement of parts, it would still be responsible, as the alleged limitation in the contract does not plainly signify such an aim.
 
 [2]
 

 Finally, defendant complains that the district court erred in including in the award the profit which plaintiff would have made from its sale to Roberts and Smith.
 

 Article 2531 of the Code provides that, if the vendor did not know the vices of the thing, he is only bound to return the purchase price and the expenses occasioned by the sale. However, if the vendor has knowledge of the vices and fails to disclose them, he is answerable to the buyer in damages, which would include lost profits. Article 2545, Civil Code.
 

 In the case at bar, the question of defendant’s.actual knowledge of the defects is unimportant. It was the manufacturer of the air-conditioning units,
 
 [3]
 
 and is therefore presumed to have known of the vices therein. Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 and authorities there cited. Hence, the trial judge properly allowed recovery of lost profits.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . That Article declares: “Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
 

 [2]
 

 . The case of J. A. Fay & Egan Co. v. Roseland Box Co., 170 La. 602, 128 So. 649, 651, heavily relied on by defense counsel, does not support their contention for, there, the contract of sale spelled out in unmistakable terms that the buyer would be given 30 days within which to return the machinery if it did not function satisfactorily and that, if it were not returned within that period, it would be a conclusive admission of the truth of all representations made by the vendor and “ ‘ “a . fulfillment of all of its contracts of warranty express or implied.” ’ ”
 

 [3]
 

 . We are not impressed by defense counsel’s suggestion that, since the defective motors contained in the air-conditioners were not manufactured by defendant, the latter should not be held for the profits lost by plaintiff as a result of the breach of the warranty of fitness. Plaintiff is the manufacturer of the air-conditioning units and liable, as such, under the law, even though the units assembled by it contained parts which were fabricated by other concerns.