134 So.2d 880

**AIRCO REFRIGERATION SERVICE, INC.**

v.

**David FINK.**

No. 45598.

Nov. 6, 1961.

Rehearing Denied Dec. 11, 1961.

Andrew H. Thalheim, Gretna, for applicant.

Curtis, Foster, Dillon & Huppenbauer, Francis J. Mooney, Jr., New Orleans, for plaintiff-respondent.

SANDERS, Justice.

This is a suit on a contract. The plaintiff, Airco Refrigeration Service, Inc., seeks judgment against the defendant, David Fink, in the sum of $1,162.64, representing the contract price of $1,057 and extras for moving and re-installing a used air-conditioning unit at the defendant's restaurant located at Grand Isle, Louisiana. The defendant resists liability on the ground that the system failed to give satisfactory service because of defective installation.

The trial court dismissed plaintiff's suit on the contract but reserved its right to institute suit against the defendant on quantum meruit basis for the benefits which inured to him from the installation. On appeal the court reversed this judgment and rendered judgment for plaintiff in the sum of $922.64, with legal interest from the date of judgment, representing the contract price and extras less a credit of $240, the cost of insulating the ducts in conformity to the contract. See 127 So.2d 290. Upon application of defendant we granted certiorari to review the ruling of the court of appeal.

According to the written contract, dated January 23, 1957, the plaintiff agreed for the sum of $1,057 to move a ten ton water-cooled air-conditioning unit used by defendant in his restaurant and re-install it in an equipment room outside of the building. The undertaking included the neces-

sary electrical work, the installation of the water pump next to the cooling tower, the piping, and the installation of metal ducts. It also included the insulation of the ducts both on the inside and the outside with one inch board type Fiberglas.

The contract contained the following warranty provision:

"We will start test and place this system into operation for a total price of One Thousand, Fifty-seven Dollars ($1,057.00). However this price does not include any warranty for services to air conditioning unit other than work performed by us."

The installation was completed, and the system was placed in operation on January 31, 1957. At that time it tested as operating normally. With the advent of warmer weather, the system failed to provide adequate cooling for the restaurant. The plaintiff attributed this to scale in the well water being used which clogged the spray tree in the water tower. Upon defendant's complaint in June, plaintiff cleaned the water tower, added chemicals, and performed other air-conditioning services not covered by the contract. The plaintiff billed Fink in the sum of $105.64 for these extras. The system continued to render unsatisfactory service because of the lack of insulation on the duct which conveyed the cool air through the kitchen to the dining room. On July 18, 1957, the plaintiff wrote to the defendant offering to install the insulation if the defendant would make a partial payment on the contract price. In the meantime, however, Fink purchased a new air-cooled unit of greater capacity with which he used the ducts installed by plaintiff. He refused to make a partial payment to plaintiff. Although still in use at the time of this suit, the duct was never insulated. The cost of adding the insulation was estimated at $240.

Relying upon Article 2769 of the LSA–Civil Code, the court of appeal found a substantial performance of the contract by the plaintiff and rendered judgment for the contract price and extras less the sum of $240, the cost of insulating the duct. The court stated the applicable law as follows:

"With reference to the performance vel non of building contracts, where the contractor has defaulted, either in not completing the work or having performed defective work, but where there has been substantial performance, the contractor may sue for the full contract price. The remedy of the owner then is to allege and prove the nature and extent of the unfinished or defective work and the cost of completion and correction, the same to be deducted from the balance due under the contract. The burden is not upon the contractor to prove the value of the actual work done on a quantum meruit basis."

In this Court the defendant asserts that the plaintiff cannot recover on the contract, since it is shown to have been breached, and that the court of appeal was in error in applying Article 2769[1] of the LSA–Civil Code. He relies upon Article 2520[2] of the LSA–Civil Code and the holdings of this Court in Radalec, Incorporated v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830, and B. F. Edington Drilling Company, Inc. v. Yearwood, 239 La. 303, 118 So.2d 419.

■ The contract involved in the instant case is a building contract within the definition of Article 2756 of the LSA–Civil Code.[3] Article 2769 is therefore controlling. Under this codal provision the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.[4]

■ Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.[5]

■ The principal question presented in this case is whether or not there has been substantial performance so as to permit recovery on the contract. This is a question

---

1. Art. 2769. "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

2. Art. 2520. "*Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

3. Art. 2756. "To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price." See Mangin v. Jorgens, La.App., 24 So.2d 384; 7 Louisiana Law Review 564 (1947); Planiol Civil Law Treatise (Translation), Vol. 2, Part 2, Nos. 1897–1901.

4. Cairy v. Randolph, 6 La.Ann. 202; Reimann Const. Co. v. Upton, La.App., 178 So. 528; Davidson v. McGrath, 5 La. App. 125; Merrill v. Harang, La.App., 198 So. 386; Lillis v. Anderson, La.App., 21 So.2d 389; Mangin v. Jorgens, La. App., 24 So.2d 384; Brandin Slate Co. v. Bannister, La.App., 30 So.2d 877; Poche v. Landry, La.App., 57 So.2d 808; D'Avy v. Briley, La.App., 72 So.2d 758; Spicuzza v. Ranzino, La.App., 73 So.2d 208; Baker v. Stamps, La.App., 82 So.2d 858; Norman v. Brown, La.App., 83 So.2d 488; Jones v. Tusa, La.App., 100 So.2d 799; Jack v. Henry, La.App., 128 So. 62; Jerrie Ice Company v. Col-Flake Corporation, D.C., 174 F.Supp. 21, aff'd 5 Cir., 278 F.2d 508.

5. Town & Country Contractors v. Henderson, 231 La. 131, 90 So.2d 863; Davidson v. McGrath, 5 La.App. 125; 7 Louisiana Law Review 564, 578.

of fact.[6] Among the factors to be considered are the extent of the defect or nonperformance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed.[7]

The evidence is conclusive that the plaintiff breached its contract only in failing to insulate the metal duct which passed through the kitchen. All other work covered by the contract was properly completed. This included the moving of the air-conditioning unit and the installation of the pump, the ducts, the connections, the dampers, the switches, and the electrical wiring.

The plaintiff attributes the failure to insulate the kitchen duct to an oversight of the sheet metal worker of a subcontractor. The absence of this insulation reduced the efficiency of the system and caused the precipitation of moisture in the kitchen.

The plaintiff offered to complete the insulation if defendant would make a partial payment on the contract price. The defendant refused to make the payment.

The defendant replaced the used air conditioner with a new air-cooled unit of greater capacity. Although he continued to use the ducts, he did nothing to have the insulation completed.

The addition of the insulation to the duct presented no major problem from a structural or mechanical standpoint. If it had been added during the installation, the cost would have been substantially less than the estimate of $240, which includes the cost of a special trip to the restaurant for the adjustment.[8] The contract did not include any warranty for services to the air-conditioning unit other than work performed by the plaintiff.

■■ We conclude, as did the court of appeal, that there was substantial performance of the contract by the plaintiff. It is, therefore, entitled to recover the contract price less damages for the nonperformance.[9] The only evidence of damages in the record is the estimate by plaintiff's expert witness that it would cost $240 to insulate the kitchen duct. Although the case

6. The trial court made no reference to the doctrine of substantial performance in its opinion; hence, that court made no findings of fact in respect to it.
7. Ilgenfritz v. Radalec, Inc., 226 La. 59, 74 So.2d 903; Town & Country Contractors v. Henderson, 231 La. 131, 90 So.2d 863; Mangin v. Jorgens, La.App., 24 So. 2d 384; Jones v. Tusa, La.App., 100 So. 2d 799; Pelican Signs v. D'Aquin, La. App., 107 So.2d 722; 3A Corbin on Contracts, §§ 700–707, pp. 308–331 (1960).
8. The plaintiff is domiciled in New Orleans. The restaurant is located at Grand Isle, a summer resort more than a hundred miles distance by highway. At the time of the contract, the plaintiff had its personnel in the area engaged in other work. The ducts were fabricated and installed by a subcontractor likewise from New Orleans.
9. LSA–C.C. Article 2769.

was held open by the district court to permit the defendant to offer additional evidence,[10] he introduced no evidence of damages. Under these circumstances we accept the estimate of the plaintiff.[11] We find that the liability of the defendant for the extras is amply supported by the record.

 While defendant has strenuously urged that this Court apply Article 2520 of the LSA–Civil Code relating to redhibition and the avoidance of sales, we have concluded that this codal article has no application if for no other reason than that the basic contract in this proceeding is not a sale.[12] Neither do we find apposite the cases of Radalec, Incorporated v. Automatic Firing Corp., supra, and B. F. Edington Drilling Company, Inc. v. Yearwood, supra, relied upon by the defendant. The first of these cases involved a sale to which redhibition was applicable. The Edington case involved a contract to drill a water well for irrigation purposes. Assuming that LSA–C.C. Article 2769 is applicable to such a contract, the facts were such as to show that a well of a specified capacity was the purpose of the contract. The Court construed the contract to contain an express warranty that the well would produce 1,000 gallons per minute. When completed, it produced approximately 650 gallons per minute. The well was never used by the defendant. The purpose of the contract had been defeated. Under these circumstances, the contract was not substantially performed so as to permit recovery on it. The case is thus distinguishable.

For the reasons assigned, the judgment of the court of appeal is affirmed.

---

10. The case was laid over from September 25, 1959 to November 13, 1959 for this purpose.

11. See A.B.C. Oil Burner & Heating Co. v. Palmer, La.App., 28 So.2d 462; Beeson v. Oden, La.App., 58 So.2d 221.

12. See Mangin v. Jorgens, La.App., 24 So. 2d 384; Papa v. Louisiana Metal Awning Company, La.App., 131 So.2d 114.