YARRUT, Judge,
(dissenting).
The majority opinion substantially and correctly outlines the nature and the issues involved in this case.
The swimming pool was rectangular in shape, measuring 18 by 42 feet, extending 3 to 5 feet below the surface, 8-inch walls and 6-inch bottom slab, for a total contract price of $4,725.00, payable in two installments, called “progress payments,” $3,000.00 upon completion of the shell, and the remainder upon completion of the pool.
The Owner contends the “floating” of the shell was due to the negligence of the Contractor in failing to keep the shell filled with water, the only safe means of preventing its “floating” which was a natural hazard, well-known to all engaged in building subsurface swimming pools; and that LSA-Civil Code, Article 2758, quoted in the majority opinion, makes the Contractor responsible.
The Contractor, however, contends that the Owner, upon paying the first installment, after completion of the concrete shell, became the owner and responsible *178 for its damage, under LSA-Civil Code, Article 2761, quoted in the majority opinion.
The contract here is a building or construction contract, governed by LSA-Civil Code, Article 2758, and not the sale of detached pieces under LSA-Civil Code, Article 2761. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880.
The pivotal question, however, is not whether the erection of the swimming pool was a construction contract, rather than a sale, but who was responsible for its destruction or damage prior to final delivery under LSA-Civil Code, Article 2758, for known hazards that could have been avoided during construction. Brown v. Sanders, La.App., 149 So.2d 228; writ refused by Supreme Court, 244 La. 152, 150 So.2d 770.
The case of Industrial Homestead Ass’n. v. Junker, Orleans No. 7402 (1919), is easily distinguished from the case at bar. In the cited case, the contractor was held not liable for the return of progress installment payments made to him at the time the building, not yet completed, was completely demolished “by a storm of unprecedented violence,” which visited the city after payment to him for the work already completed ; and the City Architect had refused to permit the re-erection of the destroyed structure because the plans and specifications, furnished by the owner, were defective. In the cited case, the destruction was due to a vis major, through no fault of the contractor; and to the fault of the. owner in furnishing defective plans and specifications.
The case of Dreyfus v. City of New Iberia, 150 La. 1020, 91 So. 439, involved the construction of a sidewalk at so much per square foot, and allowed the contractor’s demand for payment for that part of the work already completed, the court holding that the contract was divisible because “made at the rate of so much per measure.” That case is not apposite here, as it did not involve liability for destruction before completion of the entire contract.
The case of N. Levy & Son v. Paquette, 144 La. 244, 80 So. 269, cited in the majority opinion, is not in point, as it involved only the ownership of existing and unused pilings as between the owner and the insolvent contractor’s creditors, for which the owner had already paid the contractor.
The contract here specifically provides that the “Owner shall be responsible for any unknown underground obstructions or unknown soil conditions, including excessive underground water, and should any such obstruction exist, the Owner shall pay the Contractor for extra costs incurred.” (Emphasis ours.)
All experts agreed that it is common knowledge among swimming pool builders that a swimming pool shell will float and shift from the buoyancy of underground water unless it is kept filled with water. This danger was a “known” instead of an “unknown” subsurface danger, for which the Owner would not be liable under the terms of the contract.
The Contractor had one of its men visit the shell on two occasions before the entire pool was completed and accepted, in an effort to fill the shell with water, using a small rubber hose, but left before completing the fill. This method of filling would have required three days. The Contractor sought to prove that his man, before he left, obtained the consent of one of the Owner’s men to complete the filling. This the latter denied. Certainly the Contractor could not shift his responsibility to the Owner through one of the latter’s unauthorized employees, even had the latter agreed thereto.
The offending underground water which caused the shifting of the shell was a known and expected condition, protection against which was the responsibility of the Contractor, not the Owner, which was not subsequently assumed by the Owner.
The damage occasioned by the shifting of the shell resulted from the negligence *179 and lack of care and skill on the part of the Contractor when it failed to keep the shell constantly filled with water before final completion and delivery for use to the Owner. Parker v. Brown, La.App., 150 So.2d 306; Wolfe v. LeVasseur-Hinson Construction Company, La.App., 147 So.2d 747; Kuhlman v. Talley, La.App., 145 So.2d 101.
There seems to be no dispute concerning the cost of correcting the damage, as was testified to by an experienced swimming pool contractor, who made the repairs. The judgment of the District Court in favor of Plaintiff (Owner) and against Defendant (Contractor) is correct and should be affirmed. I, therefore, respectfully dissent.