SARTAIN, Judge.
Plaintiff, appellant here, as the owner of one certain mortgage note executed by-Harold A. Lanzl and Vada Hyman Lanzl, husband and wife, defendants, appellees, here, instituted this action for collection thereon. Plaintiff further alleges that said, note is secured by a first lien and mortgage-executed by appellees as security for said. *340 note. The amount sought in recovery is the sum of $12,474.70, representing the balance due on said note, together with legal interest thereon from date of judicial demand and for reasonable attorneys fees. Plaintiff further seeks recognition of its lien and privilege resulting from the aforesaid mortgage.
Defendants filed a general denial which in essence urges that the aforementioned note was not paraphed for identification with the act of mortgage nor are the note and mortgage similar in terms and conditions to the extent that one supports the other and therefore urges that said mortgage is invalid. By way of reconvention, defendants further allege that they are entitled to a substantial reduction in the amount sued upon and in addition are entitled to damages from plaintiff because of plaintiff’s breach of contract with defendants. The trial judge held that plaintiff had in fact breached its contract with defendants, reduced the amount of the note to $8,855.12 and rendered judgment in favor of plaintiff against defendants in this amount. The trial judge also held that defendants were entitled to recover from plaintiff damages in the amount of $1,585 and rendered judgment in favor of defendants in this amount. The trial judge further decreed that the purported mortgage entered into between the parties was null and void and of no effect. The judgment of the district court failed to award plaintiff attorneys fees. From this judgment plaintiff has appealed devolutively contending that the trial judge erred (1) in failing to award the full amount sued for, (2) in failing to award plaintiff reasonable attorneys fees, and (3) in failing to recognize plaintiff’s mortgage. Defendants have not answered the appeal but in brief urge the affirmation of the judgment rendered in the district court.
Under date of April 26, 1961 defendants entered into a contract with plaintiff for the construction of three “shell” homes to be located on Lots 48 and 49 of the Nidda Subdivision, situated in St. Tammany Parish, Louisiana. These three homes are respectively known as the “Suburbia”, the “Lanier Special” and the “Bayou Special”. According to the testimony the cost of the Suburbia was $3,195, the Lanier Special $2,095, and the Bayou Special $2,395, making a total of $7,685 for all three. In addition, closing costs were in the amount of $250 and $1,350 for three concrete slabs. The total costs amounted to $9,285. $500 was paid in cash, leaving a balance of $8,785 to which was added 7 years interest at 6%, or $3,689.70. The total of these sums less the cash payment amounts to $12,474.70, which is the amount stated on and represented by the note sued upon. On the same date, that is April 26, 1961, defendants signed what was purported to be a first lien and mortgage on Lot 48. The note and mortgage were to be paid in 84 monthly installments of $148.50, except that the last and final installment is in the amount of $149.20. Defendants made one payment on December 15, 1961 in the amount of $100 and refused to pay any other installments because of plaintiff’s alleged breach of contract.
Plaintiff commenced the construction of these three homes and ultimately completed the same. The Lanier Special and the Bayou Special were completed in accordance with the list of materials and respective plans. For reasons more fully stated hereinafter the Suburbia which was located on said Lot 48 was not completed in a satisfactory manner. The bulk of the testimony in this matter involves the Suburbia home and the alleged defective and improper workmanship thereon.
The trial judge held that plaintiffs by virtue of their satisfactory completion of two of the three homes had substantially complied with the overall contract but that in view of the fact that the Suburbia home was not completed in a satisfactory manner defendants were entitled to a diminution in the total contract price by the amount necessary to properly complete the third home. *341 We are in accord with this conclusion. The .law applicable to cases such as this is found in LSA-C.C. art. 2769 which reads as follows:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall he liable in damages for the losses that may ensue from his noncompliance with his contract.”
In the case of Aireo Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880, on page 882, the Supreme Court of Louisiana stated:
“[1,2] The contract involved in the instant case is a building contract within the definition of Article 2756 of the LSA-Civil Code. Article 2769 is therefore controlling. Under this codal provision the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.
[3] Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.
[4] The principal question presented in this case is whether or not there has been substantial performance so as to permit recovery on the contract. This is a question of fact. Among the factors to be considered are the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed.”
In Lillis v. Anderson, La.App., 21 So.2d 389, the difference between procedure in this type of action from that which pertains to other commutative contracts is clearly set forth, where the court stated:
“While it is the general rule that a person suing to recover on a commutative contract must allege and prove that he has fully performed his part of the engagement in order to recover, it is the well-settled jurisprudence of this state that this doctrine is without application to suits brought on building contracts. Article 2769 of the Civil Code provides: ‘If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.’
The foregoing article has been construed by the courts to mean that, where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is, nonetheless, entitled to recover the contract price if the defendant fails to establish the damages he has sustained by reason of the contractor’s partial default. The remedy of the owner in such cases is for a reduction in the price to an amount necessary to perfect or complete the work according to the terms of the contract. See Cairy v. Randolph, 6 La.Ann. 202; Babst v. Peritz, Orleans No. 7548 (unreported, see La. and So.Dig.) ; Berns & Bros. v. Reiss, 12 Orleans App. 126; Davidson v. McGrath, 6[5] La. App. 125; Reicke v. Bland, 7 La.App. 280; Peterson v. Peralta, 3 La.App. 516; Reimann Const. Co. v. Upton, La.App., 178 So. 528 and Merrill v. Marang [Harang], La.App., 198 So. 386.”
Again in Aireo Refrigeration Service, Inc. v. Fink, supra, the court stated:
“With reference to the performance vel non of building contracts, where the contractor has defaulted, either in not completing the work or having performed defective work, but where there has been *342 substantial performance, the contractor may sue for the full contract price. The remedy of the owner then is to allege and prove the nature and extent of the unfinished or defective work and the cost of completion and correction, the same to be deducted from the balance due under the contract. The burden is not upon the contractor to prove the value of the actual work done on a quantum meruit basis.”
Plaintiff and defendants in support of their respective positions relied upon witnesses recognized by the court as experts in the field of home construction. There was, of course, a great difference of opinion between the two sets of witnesses as to defects in and cost of repairing the Suburbia home. In substance, plaintiff’s witnesses testified that the defects complained of were minor and could be corrected at a cost not exceeding $150. Defendants’ witnesses were of the opinion that the home should be reduced to the slab and rebuilt in its entirety. The trial judge after visiting and personally inspecting the defective home accepted the testimony of defendants’ witness, Robert L. Lobdell, a well qualified architect, appraiser and building contractor, whose testimony was fully corroborated by that of Mr. James H. Heap, a contractor in the 'Covington area. We quote with approval the trial judge’s evaluation of Mr. Lobdell’s testimony as contained in the said judge’s written reasons for judgment:
“‘He found fault eaves construction and finish in that the rafters were out of alignment and the roof did not properly cover the fascia board, allowing for leakage behind same. He found that the doors and windows were not weather-sealed, allowing water to leak in, and found that one door in the Suburbia had rotted out. He found that the foundation had not been properly poured, in that there had been no “grubbing” of the site. He further found that the Suburbia was neither plumb nor level, and two of the exterior corners were leaving in, that the top plate was not level, and that the slab was higher in the center than at the edge, longitudinally. He found the wall studs were not cut true, that the rafters were higher in the middle than at the outer edge of the house; he found that the slab buckled out at the front edge about an inch and a half, and that the frame followed along the bulge so that the front wall also bulges out. He found most of structural members to be bent or built crooked. He found the eaves to be out of level with gaps between the roof and ceiling and the fascia board, and that the doors and windows were not properly framed. He found the two by six ceiling joists to be notched at each end in order to bring the ceiling height down to the proper level. He found the rafters to be not properly anchored, and in some places to have pulled away from the ridge board. He found that the ridge board was too short, and that one pair of rafters was not properly tied into the rest of the house. He found the provisions for the waste lines through the slab to be either inadequate or nonexistent. He found, as a whole, that the house was not structurally sound, mainly because of the notched ceiling joists and because of a beam over the carport which was not properly anchored nor adequate for the job it was supposed to do. He felt it would be impossible to get an acceptable sheetrock job in the house, and that the only way it could be right would be to tear the house down and build it again from the slab, which would first have to be re-worked to eliminate the bulge and to put in proper provisions for plumbing.
He felt that the frame house and the slab could be produced for a total cost of , $3,688.00. From this he deducted the cost of the slab, and added the amount that it $3,299.00. He found that $750.00 worth would take to re-work the slab and to tear down the structure, leaving a balance of of material could be salvaged from the present house, leaving a total of $2,549.00 that it would cost to re-do the house prop *343 erly. In addition, he found that Mr. Lanzl would lose over ninety per cent of what he had expended for wiring, tile, plumbing and sheetrock, in attempting to finish the house. This totaled $1,357.00.”
A reading of the record clearly convinces us that the testimony of defendants’ witnesses is in much more detail and was the result of closer examination and appraisal of the facts than is that of plaintiff’s witnesses and amply supports the trial judge who stated:
“However, after hearing the testimony, and particularly after examining the workmanship in the house myself, I have come to the conclusion that the work done in the Suburbia is completely unsatisfactory, and that, in order to do the job properly, the building must be torn down and rebuilt. I am of the opinion that Mr. Lanzl is entitled to a diminution in the contract price because of the failure of the contractor to properly perform. I believe that the figure of $2,549.00 testified to by Mr. Lobdell is reasonable under the circumstances.
In addition, I am of the opinion that Mr. Lanzl is entitled to recover the sum of $1,350.00 for wiring, tile, plumbing and sheetrock which he has heretofore put into the house, and $235.00 for the rug pad lost and the reinstallation of carpeting in the house. This makes a total credit of $4,134.00, to which I find the defendants are entitled.”
Accordingly, the trial judge rendered judgment in favor of the plaintiff computed as follows: cost of all three homes, including the slabs and closing costs amounted to $9,285, less the down payment of $500, leaving a net cash amount of $8,785 due. From this amount he deducted the sum of $2,549, the amount necessary to put the Suburbia home in proper condition. This left a balance due of $6,236. Interest at the rate of 6%, discounted for 7 years, amounts to $2,619.12, making a total of principle and interest in the sum of $8,855.12.
Under the above cited authorities he also rendered judgment in favor of defendants, plaintiffs in reconvention, against plaintiff, defendant in reconvention, in the amount of $1,585 as damages suffered by defendants resulting from plaintiff’s failure to properly complete the third home. The record amply supports these items and the trial judge’s opinion with respect thereto should be affirmed.
We now turn to the question of the validity of plaintiff’s purported mortgage. In this connection we recognize that both the note and the mortgage were signed by defendants, both bear the date of April 26, 1961, both recite the principle obligation of $12,474.70, both provide 83 payments at $148.50 and a final payment of $149.20, and both reflect that the first payment is due on June 20, 1961. However, the mortgage was witnessed by “Reginald M. Moak” and “Bobby Joe Graham”. The note was witnessed by “R. M. Moak” and “Carmen Clarke”. The mortgage was passed before Emery Goff, Notary Public, at said notary’s office in Bogalusa, Louisiana. The note contains the seal and signature of Wm. C. Smith, Notary Public and reflects that the same was signed in Covington, Louisiana. The mortgage provides interest at the rate of 6% per annum from maturity. The note prescribes “interest after maturity at the highest lawful rate”. The mortgage further provides that “the same promissory note after having been paraphed ‘ne varietur’ of even date herewith, by me, said notary, to identify same herewith, has been delivered to Tom Muir-head”. The note bears no statement that the same was paraphed by either Emery Goff or Wm. C. Smith. The provisions for attorneys fees in the act of mortgage is left blank. The mortgage note provides for “a reasonable attorney’s fee”. With these discrepancies between the aforementioned comparable provisions of the note and the act of mortgage, we find that the trial judge was correct when he stated:
“In view of the fact that the note sued on is not paraphed at all, and in view of the *344 fact that the signature of a notary different from that which appears on the mortgage is on the note, it appears clear that there is no connection between the two documents. In my opinion, the privilege arising from the mortgage can be given no recognition in the absence of the mortgage note.”
Plaintiff urges that defendants admit to their signatures on both the note and the mortgage instrument and further admit that at the time of the execution of the act of mortgage it was their intent to have the same act as a first lien and mortgage on their property and as a result of such admissions they have judicially confessed to the existence of a valid and effective mortgage. In support thereof plaintiff cites Trussel v. Land, 19 La.App. 124, 138 So. 910. We have reviewed the cited authority and must conclude that the facts therein presented are inapposite to those in the instant matter. In the Trussel case the question was whether or not the act of mortgage itself referred to one or two notes. The court held that when there is a discrepancy between the printed and written parts of a mortgage the written portions prevails. This rule cannot avail to plaintiff’s benefit herein because in the Trussel case there was no discrepancies or variances noted between the note and the mortgage.
 Plaintiff also cites LSA-R.S. 9 :- S30S, Pepper v. Dunlap, 16 La. 163; Jones v. Elliott, 4 La.Ann. 303, and Chambliss v. Atchison, 2 La.Ann. 488 as authority for the proposition that it is not necessary that a note be paraphed to be properly identified with an act of mortgage. The general rule for which these cases stand as authority is correct and a mortgage note does not have to be paraphed if it can be identified in all other respects with the act of mortgage so that there can be no doubt that the two instruments are in fact related and that one stands as security for the other. However, we have an entirely different situation here. We have a notary in the act of mortgage specifically reciting that he has in fact properly described a note and in addition thereto has paraphed said note for identification with the act of mortgage whereas the note reveals that the same was signed before a different notary and different witnesses. This in our opinion precludes the question of whether or not the notary in the act of mortgage inadvertently overlooked paraphing the note. Another distinguishing point between the authorities cited and the case at hand is that the note sued upon and the act of mortgage relied upon recite different rates of interest. These discrepancies are in our opinion sufficient to dissever the necessary identification of one to the other. For the trial judge or us to hold that the note should be identified with the purported act of mortgage would require a reformation in description as to the rate of interest and to further disregard the signature and seal of Wm. C. Smith, notary, which appear on the note.
The remaining issue concerns plaintiff’s demand for attorneys fees. Plaintiff urges that it is entitled to reasonable attorneys fees and in support thereof offered evidence of an attorney with respect to what would be a reasonable fee under the circumstances.
We do not believe that plaintiff is entitled to any attorney fee from defendants in this cause because the same was precipitated by plaintiff’s own breach of contract in a very significant way. This is not exclusively a suit for collection on a note. The effort, time, energy and ability herein on the part of the attorneys involved and particularly that of plaintiff’s attorney were directed to the question of plaintiff’s defective and improper workmanship on the Suburbia home. The court found that plaintiff had in fact breached its contract and in our opinion that was sufficient to vitiate plaintiff’s demand for “reasonable attorney’s fee”.
For the above and foregoing reasons the judgment of the district court is hereby affirmed. The costs of court in the district *345 court are to be borne equally by plaintiff and defendants as per the trial judge’s order. The costs incidental to this appeal are to be borne by plaintiff, appellant.
Affirmed.