GULOTTA, Judge.
These consolidated cases involve a dispute between owner and contractor in connection with a contract for the renovation and repairs of a synagogue. Congregation Gates of Prayer filed suit against Benard A. DiMaggio seeking damages for defective workmanship and for demurrage because of DiMaggio’s failure to timely complete the contract. DiMaggio then filed suit against Congregation Gates of Prayer seeking payment of the balance due under the contract.
In his petition against Congregation, DiMaggio alleged that the total contract price was $15,823.20, that he completed all work but was only paid $13,100.00, and that he was, therefore, owed $2,723.20. It was stipulated, however, that $13,300.00 was paid. DiMaggio’s claim, therefore, totaled $2,523.20.
Congregation in its suit bases its $2,496.-00 claim for repair of plaster caused by water leaks and for costs of completion of work under the contract. They seek additionally the sum of $3,000.00 for demur-rage because of DiMaggio’s failure to timely complete the job.
An award in the sum of $2,088.00 was made in favor of DiMaggio in his suit against Congregation after a credit, or set off, was allowed. The setoff, according to the trial judge, is the cost to complete the work, under the contract, which DiMaggio failed to do. Congregation’s suit against DiMaggio was dismissed. Congregation appeals from both judgments. DiMaggio does not seek any modification of the judgments. We affirm.
Congregation seeks to support its claim for repair of the plaster and completion of the work upon an estimate of Lan-dis Construction Co., Inc., and the accompanying testimony of Landis’ expert witness, Ray Louvier. The trial judge rejected the testimony of Mr. Louvier stating:
“ * * * it (testimony of Louvier) was simply a statement of a whole lot of things which had not been contemplated and which had not been complained about.”
The trial judge was correct in discarding the Landis estimate because, as pointed out in the reasons for judgment, it merely gives an overall price of repair work to he performed on the synagogue. There are items included that are not related to work that DiMaggio contracted to perform. Furthermore, there is no correlation between the estimate and work that is alleged DiMaggio failed to perform.
Although the trial judge properly discarded the Louvier estimate, nevertheless, Congregation, in a letter to DiMaggio dated September 30, 1969, makes specific complaints. For purposes of clarity, it is necessary that each be considered separately.
The first complaint is that the roof areas were not cleaned and trash was not removed. This is a minor item. The temple administrator, Mrs. Florence Lovey, stated that she had the porter complete this item as a part of his regular day’s work. The total amount of trash consisted of only “several large cartons.” Obviously, this item was of minor expense, if any, to Congregation.
*130 Secondly, Congregation complained that the tie rods were not painted. However, Martin Couret, an employee of one of the subcontractors, stated that he, himself, had painted the tie rods. He acknowledged that he painted them just before a rain, and it was possible the rain had washed off the paint. Three or four witnesses for Congregation, including its expert witness,Mr. James Josephs, stated that the tie rods had only the original coat of paint placed on them by the manufacturer. It is apparent from the record that if the tie rods were painted, the rain washed the paint off shortly thereafter. In any event, it cannot be said that the contractor properly performed on this item.
There is a conflict in the testimony on the cost of painting the tie rods. DiMaggio testified that one-half gallon of paint and two men working for less than one day could do the job. His estimate was between $100.00 and $125.00. On the other hand, James Josephs, Congregation Gates of Prayer’s expert witness, estimated that it would cost $1,000.00. According to Josephs, because scaffolds would be required, the cost would be increased. The trial judge apparently accepted DiMaggio’s estimate. In this, we find no error.
By Congregation’s own witness, the waterproofing of the northeast corner of the sanctuary (a further complaint) would require only a dollar’s worth of copper and two hours labor. DiMaggio also indicated that the cost of this item would be a minor expense.
The next item of complaint is that DiMaggio failed to install rubber softener between the tie rods and the air conditioning ducts. However, Josephs acknowledged that the softener is now in place. This, then, is not in contest.
A more serious complaint of Congregation is that plaster is bleeding through the paint on the ceiling above the organ -pit. The plaster apparently has suffered' water damage. Congregation points out that the contract required a new roof to be installed, and the plaster damage is the result of leaks caused by holes and defects in the new roof. On the other hand, DiMaggio argues he is not responsible for the damaged plaster since the roof was completely repaired, and there were no leaks after he completed the job. He indicated, however, that water could have damaged the plaster from rain when the roof was being replaced. DiMaggio insisted that he had no responsibility to repair the plaster under' the circumstances; nevertheless, he did so voluntarily. However, the record substantiates damage from water to the ceiling above the organ pit. This is a proper item of damages to be included in a setoff against the balance owed to DiMaggio under the contract. DiMaggio’s estimate for that repair is from $225.00 to $325.00. Congregation’s expert, Josephs, suggested a repair figure of $500.-00 to $1,000.00. The trial judge again concluded DiMaggio’s estimate was more accurate.
The final two items alleged by the Congregation not to be performed are the repair of plaster damaged by rainwater in the men’s bathroom, also in the area above the sanctuary and in the Rabbi’s dressing room. While there is evidence indicating that the men’s bathroom and the Rabbi’s dressing room were in a state of disrepair,, nevertheless, proof is inconclusive that this plaster damage was properly the subject of DiMaggio’s responsibility. No mention of these specific complaints was made in the' letter of September 30, 1969. There was some indication that these problems could have arisen in the two and one-half year interim between the date of the alleged breach of contract and the trial of the case. Furthermore, there is no proof of the cost needed to repair these items.
In finding that the Congregation was entitled to an offset, the trial court stated that it gave full credit to the Congregation for what it would cost to complete the items thát had not been completed by DiMaggio. It is clear the trial judge reject *131 ed Congregation’s estimates to complete the work. We cannot say this is error.
Finally, we are called upon to decide whether Congregation is entitled to $3,000.-00 in liquidated damages (demurrage). The contract provides that the work is to be “substantially completed” sixty days after receipt by the contractor of written notice to proceed; and if the work is not timely performed, liquidated damages (de-murrage) in the amount of $100.00 per day will be withheld from the contractor. Congregation seeks demurrage for a thirty-day period.
DiMaggio received the notice to proceed on July 2, 1969; he, therefore, had until September 2, 1969, to perform. However, the controversy in this case relates not so much to the specific date the contract was performed but whether the renovation was ever “substantially completed” within the meaning of the contract.
DiMaggio suggests that LSA-R.S. 9:4802.1 defines substantial completion “as the finishing of construction in accordance with contract documents as modified by any change orders agreed to by the parties, to the extent that the owner can use or occupy the works or use or occupy the specified area of the works for the use for which it was intended.”
Congregation contends, on the other hand, that LSA-R.S. 9 ¡4802.1 has no application to renovation but applies only to new construction. In renovation, Congregation insists that there is substantial completion when 90 percent of the work has been done.
In the instant case, substantial completion was performed by DiMaggio under either definition. The contract price was in excess of $15,000.00 and less than $500.-00 or $600.00 of work remainéd to be done. Over 90 percent of the work had, therefore, been completéd. Under the definition of LSA-R.S. 9:4802.1, substantial completion was achieved in that services were held in the temple sometime in August, 1969; thus, the temple was used -for that use for which it was intended. Suffice it to say that in this case the contract has been “substantially completed” within the intent of the parties, and Congregation is not entitled to demurrage damages.
We hold, therefore, under the circumstances, DiMaggio is entitled to the balance [1] due under the terms of the contract, less the amount of the setoff as determined by the trial judge in DiMaggio’s suit against Congregation. The trial judge properly dismissed Congregation’s action against DiMaggio.
Accordingly, the judgment is affirmed.
Affirmed.

. See Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961).