505 So.2d 734 (1987)
AMERICAN DRUGGISTS INSURANCE COMPANY, Plaintiff-Garnishor-Appellant and Appellee,
v.
HENRY CONTRACTING, INC., et al., Defendant,
Village of Leonville, Garnishee-Appellee and Appellant.
No. 86-273.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Rehearing Denied May 5, 1987.
*735 Dan B. McKay, Jr., Bunkie, for plaintiff-appellant, appellee.
Morrow and Morrow, James P. Ryan, Opelousas, for defendant-appellee-appellant.
Before DOMENGEAUX, FORET and KNOLL, JJ.
DOMENGEAUX, Judge.
In this garnishment proceeding the plaintiff American Druggists Insurance Company[1] seeks to enforce a judgment against Henry Contracting, Inc., Rodney Henry, and Karen F. Henry, by garnishing funds which the Village of Leonville allegedly owed to Henry Contracting under a construction contract. The trial court rendered judgment in favor of American Druggists', setting the amount the Village owed Henry Contracting at $11,692.28, with interest, and ordering the Village to withhold that amount and pay it to the Sheriff of St. Landry Parish for credit on the Writ of Fieri Facias issued upon motion of American Druggists. From this judgment both American Druggists and the Village of Leonville appeal.
On June 22, 1981, Henry Contracting entered into an agreement with the Village to construct an eight inch water transmission line. The agreement required Henry Contracting to begin work within ten days of the Notice to Proceed, and to complete the work within 120 calendar days. The Notice to Proceed was dated October 2, 1981, with the 120 days for completion starting on October 12, 1981. During this period there were 87 "non-work" days. On June 29, 1982, the Board of Health gave its approval for the water transmission system.
In its bid for the Leonville water transmission line project, Henry Contracting completed a bid schedule which listed 20 items, giving the unit price bid for each item as well as the total bid for the item based on the total number of units. The total bid for the contract was reached by taking the sum of all 20 individual units. Henry Contracting made a total bid of $139,019.57.
On February 15, 1984, the Ninth Judicial District Court rendered judgment in favor of American Druggists and against Henry Contracting, Rodney Henry, and Karen F. Henry in the sum of $32,000.00, plus $1,500.00 as attorney's fees, and interest. American Druggists brought this proceeding in the Twenty-seventh Judicial District Court for the Parish of St. Landry to make the Ninth Judicial District Court judgment executory, to have a Writ of Fieri Facias issued to the St. Landry Parish Sheriff for seizure of a debtor's property, and further to have the Village cited as garnishee and served with garnishment interrogatories. Subsequently, American Druggists filed a Rule to Traverse the Village's answers to the interrogatories.
In answer to the garnishment interrogatories, the Village stated that while the original contract bid price was $139,019.57, the amount owed under the contract was $125,422.56, that $113,360.08 had been paid, and that, after deducting $7,048.56 for damages, $4,983.92 was due Henry Contracting on the contract.
After trial on the rule to traverse the answers to the interrogatories, the trial court made the following conclusions: that the contract was ambiguous in that it was uncertain whether the price was fixed or dependent on the quantity of work actually required; that testimony determined that the contract price was dependent on the amount of work actually performed; that *736 that price was $125,422.56, plus allowable extras and interest; that the price of allowable extras totaled $4,830.00; and that there is an offset of $5,200.00 for 52 days delay as stipulated damages. The trial court concluded that the net amount which the Village owed Henry Contracting was $11,692.28, plus interest.
American Druggists makes the following assignment of error:
(1) that the trial court erred in awarding less than the difference between the amount bid on the contract and the amount actually paid prior to garnishment based on his conclusion that the contract was ambiguous and that the testimony showed the parties intended a contract price dependent on the quantity of work actually performed, which price was found to be $125,422.56;
(2) that the trial court erred in assessing $5,200.00 in stipulated damages based on 52 days delay as offset deductible from the amount the Village owes; and
(3) that the trial court erred in not allowing legal interest to accrue from the date of substantial completion on the amounts owed on the contract and with respect to the extras erred in allowing legal interest to accrue only from the date of judicial demand.
The Village assigns as error the trial court's finding that American Druggists was entitled to recover for extra work in the amount of $4,830.00 when the original petition contains no allegation of any such claim.
With respect to American Druggists first assignment of error, we must determine whether the trial court correctly concluded that the written contract was ambiguous and whether it correctly admitted parol evidence with regard to the contract's terms. The Louisiana rule on the admissibility of parol evidence was stated in Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087, at 1089 (La.1981), as follows:
"Although parol evidence is inadmissible to vary the terms of a written contract, La.C.C. art. 2276, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties."
The contract in this case consists of a number of documents, including the advertisement for bids, information for bidders, the bid, notice of award, the agreement, a statement of general conditions, and a supplemental statement of general conditions. In its bid for the project, Henry Contracting states that it will perform all work for the construction of the Leonville water transmission line "in strict accordance with the CONTRACT DOCUMENTS, within the time set forth therein, and at the prices stated below." (Emphasis added). The "prices" stated in the bid are for twenty items. The bid gives a unit and total price for each of the twenty items. The bid also gives a total contract price based on the sum of the total price of each item. The use of the plural "prices" suggests that payment was to be based on the unit prices stated and not on the total contract price, which was also stated. In any event this language is unclear.
In the notice of award sent to Henry Contracting, the Village states "[y]ou are hereby notified that your BID has been accepted for items in the amount of $139,019.57." This language indicates to us that all items would be provided for at a set price of $139,019.57.
The language of the agreement, however, contributes to the uncertainty already created. Paragraph 4 of the agreement states: "The CONTRACTOR agrees to perform all of the WORK described in the CONTRACT DOCUMENTS and comply with the terms for the sum of $139,019.57 or as shown in the BID schedule." From this language it cannot be determined whether the work will be completed for the set sum of $139,019.57 or for a price based on the unit prices stated in the BID schedule.
Other provisions of the contract do not remove the ambiguities already mentioned.
*737 For instance, the definition of CONTRACT PRICE is not helpful. This definition, found at paragraph 1.2 of the General Conditions, merely states that the CONTRACT PRICE is the "total monies payable to the CONTRACTOR under the terms and conditions of the CONTRACT DOCUMENTS." Paragraph 14 of the General Conditions requires a change order to alter the contract price and lists the methods for determining the value of any increase or decrease in the CONTRACT PRICE. This provision does not, however, give any guidance for determining the initial value of the CONTRACT PRICE. Paragraph 19, regarding payments to the contractor, sets out the method for making partial payments to the contractor during performance of the contract for work completed. This provision does not indicate on what basis the CONTRACT PRICE is to be determined.
Our review of the contract's language leads us to conclude that the contract in this case is susceptible to more than one reasonable interpretation and uncertain as to the intention of the parties. The trial court, therefore, was correct in concluding that the contract was ambiguous.
Having concluded that the contract was ambiguous, the trial court correctly admitted parol evidence to determine the intention of the parties with regard to the basis for determining the contract price. David Naomi, a civil engineer, testified that he was the engineer on the job responsible for administering the contract between the Village and Henry Contracting. The transcript of Mr. Naomi's testimony on direct examination reveals the following dialogue concerning the contract price:
"Q. Now, I direct your attention to you're familiar with the contract bid price in this particular contract, is that right?
A. That's correct.
Q. What was the amount?
A. $139,019.57.
Q. All right. Now, in No. 3 you've answered that the actual amount paid no, the actual amount due under the original terms of the contract is $125,422.56, is that correct?
A. That's correct.
Q. As the engineer, how did you arrive at that figure?
A. Basically, the contract is a unit-price contract, what the contractor installs. However many feet of pipe or as many of valves, we pay him for that particular number of feet and that particular number of valves and whatever other item is in the contract.
Q. Was the original amount of pipe and the original amount of valves that was quoted in the original contract, was that actually installed by Henry Contracting?
A. No, there'll be differences.
Q. Did you, as the engineer, make checks on the work done by Henry Contracting?
A. Yes, periodically I would go on the job, an average of once or twice a week. We did have Mr. Arthur Courville who was the inspector on the job, and he was on the job daily.
Q. So you have records of what was done?
A. Yes, that's true.
Q. Now, in order to arrive at the amount, the final amount, due Henry Contracting under the contract, you would take that, the amount of work done, refer to the line-item price in the contract, and that's how much was due, is that correct?
A. That's correct.
Q. All right.
A. When you get down to the final portion of the contract, you actually go out and measure your pipe and count your valves, because during the contract there's possibly a source of confusion. Day-to-day activities sometimes are not fairly well kept up sometimes, so we go out and actually measure everything once the job is totally complete.
Q. Did you do that?
A. Yes, sir, we did.
Q. All right. And you're certain that the figures?

*738 MR. McKAY: object, Your Honor.
Q. Are you certain of the figures?
A. Yes, to the best of my knowledge, the best that we can get."
On cross-examination Mr. Naomi's testimony was consistent with that shown above. There is no other testimony contradicting the testimony of Mr. Naomi. Therefore, the trial court was not clearly wrong in concluding, from the testimony received, that the parties intended this contract to be a unit price contract, with the price based on the actual amount of work performed.
American Druggists argue that the Louisiana rules on interpretation of contracts require that any ambiguity in the contract be construed against the Village of Leonville because it drafted the contract through its engineers. La.C.C. Article 1957 (1870) provides that "[i]n a doubtful case the agreement is interpreted against him who has contracted the obligation." La.C.C. Article 1958 (1870) provides:
"But if the doubt or obscurity arise from the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
However, the overriding principle which we must follow is that the intent of the parties is to be determined. This principle is stated in La.C.C. Article 1945 (1870) as follows:
"Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
. . . . .

FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
In a case such as we have here, where the contract is found to be ambiguous and parol evidence is admitted, we must determine whether the parol evidence removes the ambiguity by providing the common intent of the parties. Only if we cannot ascertain the common intent of the parties do we construe the ambiguous clause against its preparer. Henry v. Ballard & Cordell Corp., 401 So.2d 600 (La.App. 3rd Cir.1981); see also Light v. Crowson Well Service, Inc., 313 So.2d 803 (La.1975).
In this case the trial court concluded that the common intent of the parties could be determined from the testimony, a finding with which we agree. Therefore, construction of the contract against the Village of Leonville under La.C.C. Articles 1957 and 1958 is not necessary.
We also conclude that the trial court was not clearly wrong, based on the testimony adduced at trial, in finding that the parties intended to determine the contract price based on the bid schedule and the amount of work actually performed and that the contract price in this case is $125,422.56.
In its second assignment of error, American Druggists argues that the trial court erred in assessing $5,200.00 as stipulated damages based on 52 days delay in completing the project. It contends that stipulated damages for delay in completing the project should be assessed only through the date the project was substantially completed which it argues was May 14, 1982, and not June 28, 1982, as the trial court found.
In Walter Lafargue Real Estate, Inc. v. Raines, 420 So.2d 1309, 1311 (La.App. 3rd Cir.1982), this Court stated the following:
"It is implied in every building contract that the work of the builder will be performed in a good workmanlike manner, free from any defect either in material or workmanship. LSA-C.C. Article 2769; Neel v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir., 1975), writ denied, 319 So.2d 440 (La.1975). Nevertheless, when a contractor has substantially performed a building contract, even though certain defects are present, he is entitled to recover the contract price and the owner is relegated to having the price reduced by the amount necessary to perfect or complete *739 the work properly. LSA-C.C. Article 2769; Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Neel v. O'Quinn, supra. Thus the aforementioned article constitutes an exception to the general rule applicable to commutative contracts that no payment is due in the absence of total performance; the building contract may be enforced although the work has been substantially but not entirely performed. Whether or not there has been substantial performance, such as would allow enforcement of the contract, is a question of fact ...
Among the factors to be considered in determining whether substantial performance exists are the utility to the owner of the work performed, the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, and the ease of correction."
Also, the contract defines substantial completion in its general conditions at paragraph 1.22 as follows:
"That date as certified by the ENGINEER when the construction of the PROJECT or a specified part thereof is sufficiently completed, in accordance with the CONTRACT DOCUMENTS, so that the PROJECT or specified part can be utilized for the purposes for which it is intended."
In this case there is no written certification of substantial completion by the project engineer in the record, although the final partial payment estimate he prepared indicates that the project was completed on June 29, 1982. The daily inspection reports, prepared by the Village's inspector, Arthur Courville, show that Henry Contracting completed laying pipe on May 14, 1982, and completed testing and chlorine sanitization of the line on June 28, 1982. In this case the water lines were of no utility to the Village until the contractor provided a sanitary line which could pass the Board of Health inspection. Henry Contracting completed sanitizing the line with chlorine and made it ready for inspection on June 28, 1982. At this point, the line was substantially completed. Therefore, the trial court correctly allowed stipulated damages for the delay from May 7, 1982, through June 28, 1982, which comes to $5,200.00 for 52 days delay.
The Village assigns as error the trial court's finding that American Druggists is entitled to recover for extra work in the amount of $4,380.00. The Village argues that since the claims for this work are not within the scope of the rule to traverse interrogatories and that since it objected to the introduction of evidence on these claims at trial, an award for these damages was improper.
Once a garnishee has filed answers to the interrogatories, the creditor must attack the answers by way of a contradictory motion traversing the answers under La.C.C.P. Article 2414. That Article states in pertinent part:
"Unless the creditor files a contradictory motion traversing the answer of the garnishee within fifteen days after service upon him of the notice of the filing of the garnishee's answer, any property of the judgment debtor in the possession of the garnishee and any indebtedness to the judgment debtor which the garnishee has not admitted holding or owing shall be released from seizure. A new seizure may be made of such property or indebtedness by filing a supplemental petition and serving additional interrogatories."
In National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234 (1925), our Supreme Court discussed the nature of the garnishment proceeding and the traverse of answers to interrogatories, stating:
"Garnishment in its inception amounts to, if anything at all, only a seizure; it does not rise to the dignity of a suit until the answers of the garnishee are traversed in such manner as to set forth a cause of action against him ...
If we understand the law correctly, a traverse, to be properly and effectively drawn, should contain every essential and material allegation which would be required to be stated in a petition, had the defendant himself instituted the action *740 in his own name against his debtor, the garnishee."
Given the language of National Park Bank, we must examine the plaintiff's traverse of answers to interrogatories in light of the requirements for pleading a cause of action in a petition.
We first note that under La.C. C.P. Article 861 when "items of special damage are claimed, they shall be specifically alleged". Special damages are those which can be fixed to a pecuniary certitude. Lauer v. City of Kenner, 445 So.2d 1308 (La.App. 5th Cir.1984). Also, under La.C. C.P. Article 1154 pleadings may be amended at trial to include special damages not previously alleged by presentation of otherwise inadmissible evidence establishing such damages, and when such evidence is not objected to by the opposing party. Lauer v. City of Kenner, supra, at page 1310.
In this case, the "extra work" awarded to plaintiff in the garnishment judgment consists of $3,460.00 for valves, $880.00 for dirt and gravel, and $490.00 for removal of work already installed. These amounts are fixed to a pecuniary certainty and are special damages which must be specifically alleged in order to be claimed. We therefore must determine whether the traverse of interrogatories specifically alleges this extra work within the meaning of La.C.C.P. Article 861.
In its traverse of the Village's answers to interrogatories, American Druggists takes issue with the Village's statement that the contract price was for $125,422.56, with the Village's claims for deductions from the contract price totalling $7,048.56, and with the Village's failure to include interest on the amount due. American Druggists specifically alleges that the contract price is $139,019.57 and that the remaining amount due, including interest, is $34,896.91. American Druggists does not specifically allege that any extra work outside the scope of the contract is owed.
If the amount for extra work is owed under the terms of the contract, then the trial court properly considered evidence of its value, since the contract price was specifically alleged. If the amount for extra work is not owed under the terms of the contract, but is truly outside of its terms, then the value of the extra work was improperly considered.
Our review of the record shows that the claims for extra work are not included under the terms of the contract. The removal of "Detail 2" is not authorized by the contract or by a change order and the cost of the removal cannot be determined from the contract. The cost of gravel is included as an item of the contract. However, the testimony indicates that the $880.00 for dirt and gravel awarded here is in addition to the quantities estimated in the contract. Since the $880.00 value is greater than five percent of the estimated cost of gravel in the contract, a change order is required to bring the additional cost of gravel within the terms of the contract. In this case, no change order was issued authorizing the additional dirt and gravel. This item too, is therefore, outside the scope of the contract. Finally, the flush and gate valves valued at $3,460.00 are not authorized by the contract or by a change order, and are, therefore, not included within the contract price.
Since the items of extra work were not specifically alleged as being owed, the trial court erred in receiving evidence on the value of these items over the objection of the Village. The trial court, therefore, erred in awarding the value of these items in its judgment.
American Druggists final assignment of error is with respect to the date from which legal interest shall accrue. It argues that the trial court erred in not allowing interest to accrue on the amount remaining due on the contract price from the date of substantial completion.
We find merit to American Druggists contention. The court in National Roofing & Siding Co. v. Gros, 433 So.2d 403, 404 (La.App. 4th Cir.1983), citing La.C.C. Article 1938, stated that in an action on a building contract, interest is recoverable from the time the debt becomes due, which is the date of substantial completion. In this case, therefore, interest on the amount *741 owed is recoverable from June 28, 1982, the date the project was substantially completed.
For the above and foregoing reasons, the judgment of the trial court is recast. It is hereby Ordered, Adjudged, and Decreed that there be judgment herein assessing the amount due Henry Contracting, Inc. from the Village of Leonville, at $6,862.28, with legal interest accruing from the date of substantial completion, June 28, 1982, until paid.
It is further Ordered, Adjudged, and Decreed that the Village of Leonville, garnishee, be and it is hereby ordered to withhold and pay to the Sheriff of St. Landry Parish for credit on the Writ of Fieri Facias issued herein upon motion of American Druggists Insurance Company, the above stated sum, plus interest, and further to pay any and all sums which may subsequently become due and payable to the credit of any of the named defendants to the Sheriff of St. Landry Parish in accordance with the Writ of Fieri Facias until the full amount of the judgment and Writ has been paid.
All costs of this appeal are assessed against American Druggists.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] By order of this Court, George Fabe, Superintendent of Insurance, State of Ohio, and Liquidator of American Druggists Insurance Company was substituted for American Druggists in this appeal since American Druggists has been declared insolvent by an Ohio state court. For convenience, however, we will refer to American Druggists as the party before the court.